**SELDOVIA NATIVE ASSOCIATION INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

No. 92–130L.

United States Court of Federal Claims.

Sept. 12, 1996.

R. Collin Middleton, Anchorage, AK, for plaintiff.

Bruce M. Landon, Anchorage, AK, with whom was Assistant Attorney General Lois J. Schiffer, for defendant.

## ORDER

MILLER, Judge.

On May 30, 1996, an opinion and order issued granting defendant's motion for summary judgement. *Seldovia Native Ass'n, Inc. v. United States*, 35 Fed.Cl. 761 (1996). Thereafter, plaintiff, pursuant to RCFC 59(a)(1), moved for reconsideration, arguing that the Court had made "erroneous findings and conclusions." Plf's Br. filed June 14, 1996, at 2. Plaintiff presents two basic claims in its motion: 1) Plaintiff seeks the opportunity to brief the issue of the extent of its knowledge of the T & C and the CIRI/Interior Deficiency Agreement; and 2) plaintiff asserts that the Court made erroneous legal and factual findings. Defendant responded that plaintiff could not justify a need for additional briefing and that "Seldovia's allegations of errors are either incorrect or irrelevant." Def's Br. filed July 23, 1996, at 16.

### 1. *Standard of review*

RCFC 59(a)(1) states: "A new trial or rehearing or reconsideration may be granted ... for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." When addressing such a motion, the court is directed "to consider motions for rehearing [or reconsideration] with exceptional care." *Carter v. United States*, 207 Ct.Cl. 316, 318, 518 F.2d 1199 (1975). It has long been the view that motions for reconsideration should not be entertained upon "the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged." *Roche v. District of Columbia*, 18 Ct.Cl. 289, 290 (1883).

■ A motion for reconsideration is addressed at the discretion of the court. *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990). For a movant to prevail on a RCFC 59 motion, that movant must point to a "manifest error of law, or mistake of fact" and demonstrate that the motion "is not intended to give an unhappy litigant an additional chance to sway the court." *Circle K Corp. v. United States*, 23 Cl.Ct. 659, 664–65 (1991). The movant "should not ... be permitted to attempt an extensive re-trial based on evidence which was manifestly available at the time of the hearing." *Gelco Builders & Burjay Constr. Corp. v. United States*, 177 Ct.Cl. 1025, 1036–37 n. 7, 369 F.2d 992, 1000 n. 7 (1966). To sustain its burden, the movant must show 1) an intervening change in controlling law, 2) that previously unavailable evidence has been discovered, or 3) that the motion is necessary to prevent manifest injustice. *See Bishop v. United States*, 26 Cl.Ct. 281, 286 (1992). This showing is necessary because "[t]he litigation process rests on the assumption that both parties present their case once, to their best advantage;" a motion for reconsideration thus should not be based on evidence that was readily available at the time the motion was heard. *Aerolease Long Beach v. United States*, 31 Fed.Cl. 342, 376, *aff'd*, 39 F.3d 1198 (Fed.Cir.1994) (Table).

### 2. *Whether additional briefing should be allowed*

■ Plaintiff seeks "an opportunity to brief the issue of the extent of Seldovia's knowledge, or lack thereof, of the T & C and the CIRI/Interior Deficiency Agreement." Plf's Br. filed June 14, 1996, at 1. Plaintiff bases this request on findings that, despite plaintiff's contention that it did not understand the nature and effect of the agreements and enactments at issue, the agreements and enactments speak for themselves and that plaintiff failed to allege fraud, duress, or undue influence so as to cast doubt upon them. *See Seldovia*, 35 Fed.Cl. at 774 n. 16, 776 n. 17. Plaintiff argues that the effects of these agreements and enactments "were objectively unknowable until the Secretary had interpreted and implemented them." Plf's Br. filed Aug. 9, 1996, at 3.

Plaintiff's request for additional briefing on this issue is without merit. The parties have been afforded ample opportunity to brief the issues presented by the cross-motions for summary judgment. Based on this thorough

and protracted briefing, including post-argument briefs, plaintiff's claim that it did not understand the nature and effect of the agreements and enactments at issue had been placed fully on the record before the opinion issued. Unfortunately, plaintiff fails to comprehend the central legal findings underlying the court's opinion. The court ruled that under the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601–1629e (1994) (the "ANCSA"), plaintiff was entitled to receive 115,200 acres, but the statute "does not establish a right to any particular acre." *Seldovia,* 35 Fed.Cl. at 771. Furthermore, even if plaintiff had selected certain lands under the statute, the mere act of selecting lands does not itself give rise to a compensable property interest. *Id.* at 774–75.

The agreements and enactments at issue changed the pool of lands from which plaintiff could select. Plaintiff claims that, at the time the enactments became effective, plaintiff could not have known exactly what lands it would receive. In its motion for reconsideration, plaintiff places great reliance on *Catawba Indian Tribe v. United States,* 982 F.2d 1564 (Fed.Cir.), *cert. denied,* 509 U.S. 904, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993), for the proposition that the statute of limitations begins to run if legislative action in question strips a party of a particular right or interest. Because plaintiff could not know whether it would be allotted all the lands it selected until the procedures established by the ANCSA were implemented and completed, plaintiff takes the position that its case is distinguishable from *Catawba.* However, the distinction between the cases is that, unlike in *Catawba,* plaintiff had no right to receive the particular selections at issue. Rather, plaintiff had a right to receive an amount of land equal to the acreage allotted to it by the statute. Moreover, the essence of plaintiff's claim is its desire to select lands "that Congress, though Public Law Nos. 94–204 and 94–456, made off limits." *Seldovia,* 35 Fed. Cl. at 776. It is clear and unambiguous from these enactments that they voided a significant portion of plaintiff's selections.

Thus, at the time of the enactments, plaintiff knew or should have known that the ANCSA did not recognize plaintiff's alleged right to its selections, and plaintiff then could have sought redress in court. The fact that plaintiff might not have known the full extent of its alleged injury was not a bar to bringing suit. *See Fallini v. United States,* 56 F.3d 1378, 1382 (Fed.Cir.1995) ("[I]t is not necessary that the damages from the alleged taking be complete and fully calculable before the cause of action accrues."), *cert. denied,* —— U.S. ——, 116 S.Ct. 2496, 135 L.Ed.2d 189 (1996); *Catawba,* 982 F.2d at 1570 (holding that statute of limitations begins to run at effective date of statute regardless of party's subjective understanding of statute). The statute of limitations began to run on the effective date of the enactments. Consequently, plaintiff's argument that it had some subjective misunderstanding of the documents and enactments is irrelevant, and additional briefing on this issue is unnecessary.

### 3. *Whether legal and factual errors are present*

In its motion for reconsideration, plaintiff alleged 13 instances in which the court made erroneous legal or factual findings. These alleged errors will be addressed in the order in which they are discussed in plaintiff's brief.

### 1) *First alleged error*

In its opinion the court stated that it would not consider "a one-sentence typed amendment—uninitialed and unauthenticated—on [plaintiff's] Withdrawal, Relinquishment, and Waiver of Selections Agreement from the Lake Clark area that states: 'All other 12(b) selections made by Seldovia Native Association, Inc. shall remain valid.'" *Seldovia,* 35 Fed.Cl. at 768 n. 14. Plaintiff argues that this determination was in error because the amendment was authenticated by the affidavit of Fred Elvsaas. In the affidavit Mr. Elvsaas stated: "Seldovia conditioned its relinquishment of its 12(b) selections in those areas, however, on the remainder of its 12(b) selections remaining valid." Affidavit of Fred Elvsaas, Aug. 3, 1995, ¶ 17. This hardly suffices as authentication; it is merely a description of the amendment and it does not

explain how it was added to the document or prove its enforceability.

Moreover, in his March 31, 1992, affidavit, Mr. Elvsaas admits that this amendment was added unilaterally to the document, by plaintiff, at the time it executed the waiver and relinquishment agreement. *See* Affidavit of Fred Elvsaas, Mar. 31, 1992, ¶ 41. Finally, even if the court were to have considered the amendment at issue, it would not impact the merits of this case, because, as at least one other court has found, the amendment does not diminish or condition the effect of the relinquishment agreement or, ultimately, the T & C. *See Seldovia Native Ass'n, Inc. v. United States*, A91–076 Civ. (D.Alaska Dec. 16, 1994) (stating that T & C intended all Appendix E lands in the State of Alaska despite plaintiff's objections).

### 2) *Second alleged error*

■ Plaintiff argues that the court "mischaracterizes Seldovia's property right as a right to a certain number of acres, but no right to any particular parcel." Plf's Br. filed June 14, 1996, at 3. The basis of plaintiff's argument is a provision of section 1613(a) of the ANCSA, defining the number of acres to which each Village Corporation is entitled, which states: "The lands patented shall be those selected." 43 U.S.C. § 1613(a) (1994). Plaintiff attempts to imply that this "patent" language in the statute creates a right to receive particular acres.

The court found that, with one exception, the ANCSA gives plaintiff a right to receive 115,200 acres, but it does not give plaintiff a right to any particular acre. *Seldovia*, 35 Fed.Cl. at 771. The act of merely selecting lands does not give rise to a property interest because Village Corporations may select more acres than their statutory allotment, in case some of their selections conflict with the selections of other Village Corporations. *Id.* at 773. Thus, the act of making a selection itself does not lead automatically to issuance of a patent for that selection. As a result, the "patent" language in section 1613(a) is irrelevant to the court's ruling that plaintiff does not have a right to receive any particular acre. Plaintiff may disagree with the

legal determination, but there has been no mischaracterization.

### 3) *Third alleged error*

Plaintiff argues that the court erred by quoting a section of a document that itself contained a potential error. The court quoted the following section of the Village 12(a) Agreement:

> Both the Cook Inlet Region and the Village Corporations desire a legislative resolution that shall insure that the Village Corporations receive their statutory entitlement under ANCSA; and ... [both] support the legislation attached as Appendix A to this agreement or a version substantially conforming thereto....

*Id.* at 771–72. Plaintiff states that there was no Appendix A attached to the agreement. Defendant concedes that no Appendix A is attached to the agreement currently and that defendant has been unable to locate this alleged appendix. The court was not aware of this fact and corrects its May 30, 1996 opinion insofar as the mysterious status of Appendix A should be noted. Nevertheless, the court did not rely on the existence of Appendix A for any of its findings in this matter, and the parties' revelation that it might not exist does not affect the court's ruling.

### 4) *Fourth alleged error*

Plaintiff claims that the court erred when, in the context of its discussion of the Village 12(a) Agreement—which allowed 12(a) selections to be conveyed directly to the CIRI—it ruled that "[p]laintiff's claim that the lands should have been conveyed directly to the Village Corporations is therefore without merit." *Id.* at 772. Plaintiff objects because its complaint contains claims regarding the transfer of both 12(a) and 12(b) selections to the CIRI. Plaintiff contends that the court cannot base its finding that plaintiff's "claim"—meaning its entire claim—has no merit on an agreement that applies only to 12(a) selections, not 12(b) selections.

The court made this finding in the context of the Village 12(a) Agreement. It is fairly obvious that when a finding is made based upon a particular agreement, that finding relates to those issues covered by that agree-

ment. The court's above finding was directed only to plaintiff's "claim" regarding the transfer of the 12(a) selections to CIRI—not the transfer of 12(b) selections to CIRI. Although such a conclusion should be implicit, to the extent that the court was insufficiently precise in its finding, the May 30, 1996 opinion is corrected insofar as the above-quoted sentence should read: "Plaintiff's claim, relating to 12(a) selections, that lands should have been conveyed directly to the Village Corporations is therefore without merit." As for the transfer of the 12(b) selections to CIRI, as the opinion notes, that was approved by the CIRI/Interior Deficiency Agreement, which was ratified by Public Law No. 94–456, 90 Stat. 1934 (1976). *Id.* at 772.

### 5) *Fifth alleged error*

Plaintiff argues that the court erroneously relied on a statement made by Mr. Elvsaas in a May 4, 1976 letter to conclude that plaintiff understood the impact of the various agreements and enactments. *Id.* at 772. This statement by Mr. Elvsaas was quoted because it demonstrates that he understood the general impact of the agreements and enactments at issue. As plaintiff notes, however, this letter was written on May 4, 1976, before the August 31, 1976 CIRI/Interior Deficiency Agreement and before Public Law No. 94–456, 90 Stat. 1934, which became law on October 4, 1976. In this respect the court should have communicated that it was using this statement by Mr. Elvsaas to demonstrate his general understanding, not his particular knowledge of specific documents and enactments. Thus, the opinion is corrected insofar as the finding, based upon the letter, that "[p]laintiff knew the impact of the agreements" should read: "Plaintiff had a general knowledge and understanding of the eventual impact of the agreements." *Id.* Finally, as noted in the above discussion regarding the claim for additional briefing, plaintiff's alleged confusion regarding the effect of the various agreements and enactments does not undermine the court's ruling.

### 6) *Sixth alleged error*

Plaintiff alleges that the court erroneously concluded that plaintiff was on notice that it was not entitled to select the lands listed in Appendix C of the CIRI/Interior Deficiency Agreement because "that agreement states on its first page that CIRI shall be allotted lands listed in Appendix C only '[t]o the extent the lands conveyed pursuant to paragraph [Appendix] A when added to lands otherwise heretofore received or to be received by such Village Corporations are insufficient to satisfy their statutory entitlement.'" *Seldovia*, 35 Fed.Cl. at 772 (quoting CIRI/Interior Deficiency Agreement ¶ C). Plaintiff contends that this is an incorrect interpretation of this agreement.

Plaintiff premises its argument upon its belief that the CIRI/Interior Deficiency Agreement protected its 12(a) selections because paragraph B of that document states that "CIRI shall reconvey the surface estate of such lands to the Village Corporations within the Region pursuant to an agreement between CIRI and the affected Village Corporations," which is the Village 12(a) Agreement. That agreement states in paragraph 3:

> Upon receipt of a conveyance of such satisfactory land from the Secretary of the Interior pursuant to the legislation attached as Appendix A, Cook Inlet Region will reconvey the surface estate to such land to the Village Corporation entitled thereto under their Section 12(a) selections as rapidly as possible. . . .

Thus, plaintiff is arguing that paragraph 3 of the Village 12(a) Agreement was incorporated or ratified by the CIRI/Interior Deficiency Agreement, thereby protecting its 12(a) selections.

The CIRI/Interior Deficiency agreement is clear that plaintiff may receive the lands listed in Appendix C only if, after being conveyed lands pursuant to paragraph A of the agreement, it still is entitled to additional acres to fulfill its statutory allotment. As for the above-quoted paragraph, it proves nothing and is subject to the following condition in paragraph 3(B) of the very same agreement, which states that a Village Corporation has the right to receive the 12(a) selections only when "it is clear that a Village Corporation will be eligible for the land." This eligibility standard is governed by the CIRI/Inte-

rior Deficiency Agreement, which by its terms defeats plaintiff's claim.

### 7) *Seventh alleged error*

Plaintiff takes issue with the finding that plaintiff was apprised of the effect of Public Law No. 94–204, 89 Stat. 1145 (1976), on its selections in the Lake Clark area, *id.* at 772–73, although plaintiff admits that this finding "may be true." Plf's Br. filed June 14, 1996, at 5. In fact, plaintiff alleges no error whatsoever regarding this finding. Plaintiff simply is using this alleged error as an opportunity to re-argue the merits of the finding. The purpose of a motion for reconsideration is not to reargue the case. *See Roche,* 18 Ct.Cl. at 290. Since plaintiff has alleged no error, plaintiff's argument on this point is rejected.

### 8) *Eighth alleged error*

Plaintiff alleges that the court erred when it stated: "Plaintiff was not a party to the T & C, because the T & C involved lands to be conveyed to CIRI as a 12(b) allotment, not lands for plaintiff's 12(a) selections." *Seldovia,* 35 Fed.Cl. at 773. Plaintiff's objection is, as follows: "12(b) lands are not to be conveyed to Regional Corporations as an allotment. Regional Corporations are 'allocated' a certain amount of acreage and that acreage is reallocated to the villages from which the villages then select their 12(b) lands." Plf's Br. filed June 14, 1996, at 5.

Plaintiff is correct that the sentence in question contains some confusing terminology and one error. The May 30, 1996 opinion is corrected insofar as the sentence should read: "Plaintiff was not a party to the T & C, because the T & C involved lands to be transferred to CIRI in partial satisfaction of CIRI's 12(c) allotment, not lands for plaintiff's 12(a) selections." The court regrets this error, but it does not affect the conclusion that it was appropriate for plaintiff to be on the sidelines of the T & C because the T & C involved allocations directly to CIRI and because plaintiff would not be bound by the T & C unless it met the implementing requirements set forth in Public Law No. 94–204, §§ 12(a)(1)–(3), 89 Stat. 1145, 1151. *See Seldovia,* 35 Fed.Cl. at 772–73.

### 9) *Ninth alleged error*

Plaintiff alleges that the court incorrectly asserts that plaintiff was involved directly in the CIRI/Interior Deficiency Agreement. The court stated: "Plaintiff was directly involved in the agreements surrounding its 12(a) selections—the Village 12(a) Agreement and the CIRI/Interior Deficiency Agreement." *Id.* at 773. The statement was not in error. Plaintiff was directly involved in and a party to the Village 12(a) Agreement. That agreement's provisions regarding plaintiff's 12(a) selections were incorporated into the CIRI/Interior Deficiency Agreement. Thus, plaintiff's participation in crafting the Village 12(a) Agreement was manifested directly in the CIRI/Interior Deficiency Agreement. Consequently, with regard specifically to plaintiff's 12(a) selections, plaintiff was directly involved in and had an opportunity to influence both the Village 12(a) Agreement and ultimately, by implication, the CIRI/Interior Deficiency Agreement.

### 10) *Tenth alleged error*

In footnotes Nos. 16 and 19, the court rejected plaintiff's claim that it did not understand the nature and effect of the various agreements and enactments, stating that plaintiff's "averments of ignorance" failed to create triable issues and noting that plaintiff failed to charge the Government with perpetrating "fraud, duress, or undue influence" so as to prevent plaintiff from understanding the nature and effect of the various agreements and enactments. *Id.* at 774 n. 16, 776 n. 17. Having failed to make this argument until the filing of this motion, plaintiff now attempts to put forth an argument that the Government, indeed, did act fraudulently. Motions for reconsideration are not a vehicle for parties to present arguments that they should have made during the regular briefing. *General Elec. v. United States,* 189 Ct.Cl. 116, 117–18, 416 F.2d 1320, 1321 (1969) (per curiam).

Plaintiff's argument is not only tardy; it is timid. Plaintiff is not even willing to make a claim of fraudulent action directly; rather, it merely states that the Government provided information that was "tainted with misad-

vice." Plf's Br. filed June 14, 1996, at 6. Plaintiff's reluctance to use the term "fraud" is understandable when one examines the evidence plaintiff proffers to support its accusation. That evidence includes, among other things, accusations in a portion of a complaint filed in a prior case before a different court and a tortured reading of a June 18, 1976 letter from Chris Farrand, Assistant Secretary of the Department of Interior, to United States Senator Ted Stevens. The paucity of plaintiff's proof proves the point. Plaintiff did not argue fraud in the briefing on cross-motions for summary judgment and now, even giving itself an improper opportunity to make the claim in the context of a motion for reconsideration, still cannot bring itself to assert fraud. Plaintiff's claim of error is groundless.

### 11) *Eleventh alleged error*

Plaintiff alleges that the court erred when it stated: "Plaintiff has suggested that vested rights to land under the ANCSA do not accrue until 'completion of the numerous procedural steps mandated in the statutory scheme.'" *Seldovia,* 35 Fed.Cl. at 775 (quoting *Cape Fox Corp. v. United States,* 4 Cl.Ct. 223, 236 (1983)). Plaintiff contends that "[t]his is not an entirely accurate characterization of Seldovia's claim. Seldovia contends that its selection rights vested at the moment of selection. Its taking claims, however, did not accrue until the takings occurred, which was, with respect to any particular selection, when the selection was rejected." Plf's Br. filed June 14, 1996, at 8.

The above finding was made in the context of discussion of accrual of plaintiff's claim. The Court merely was attempting to note that plaintiff argues that its claim did not accrue for statute of limitations purposes until all the various procedural steps—*i.e.,* the final acceptance or rejection of its selections—occurred. This is what the above-quoted section from the opinion was intended to convey. Nevertheless, the sentence does create a slight ambiguity; thus, in the interest of clarity the court's opinion is corrected insofar as the above-quoted sentence should read: "Plaintiff has suggested that its claims regarding its vested rights to land under ANCSA do not accrue until 'completion of the numerous procedural steps mandated in the statutory scheme.'"

### 12) *Twelfth alleged error*

Plaintiff contends that the court incorrectly stated that "the IBLA's December 23, 1992 remand order makes clear that those selections involved land conveyed to the State under Public Law No. 94–456." *Id.* at 775. Plaintiff is correct. This sentence incorrectly identifies the lands that were the subject of this IBLA appeal. However, the point the court was attempting to make with this sentence was merely illustrative, and the court's error does not affect the ruling in this case. The sentence is stricken from the opinion.

### 13) *Thirteenth alleged error*

Plaintiff takes issue with the finding that "no action by the Interior, at any level, can alter the pool of lands made available to plaintiff by Congress." *Id.* at 775. After taking issue with this statement, plaintiff fails to allege that it is in error. Rather, plaintiff states that the court "misapprehends Seldovia's argument." Plf's Br. filed June 14, 1996, at 8. The court does not misapprehend plaintiff's argument; it rejects the argument. A motion for reconsideration is not a proper method for a plaintiff to state simply that it disagrees with the court's conclusion.

### CONCLUSION

Accordingly, based on the foregoing, plaintiff's motion for reconsideration is granted to the extent consistent with this order and is otherwise denied.

**IT IS SO ORDERED.**