550

**Wonderlyn Lorraine Bell PINCKNEY,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 06–803C.

United States Court of Federal Claims.

Nov. 20, 2009.

Wonderlyn Lorraine Bell Pinckney, Georgetown, SC, pro se.

Michael Francis Kiely, with whom were Helen Grant, Managing Counsel, Civil Practice Section, Law Department, United States Postal Service, Washington, DC, and Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC, for defendant.

*OPINION*

EMILY C. HEWITT, Chief Judge.

Before the court is Plaintiff's Motion for Reconsideration of Court's Opinion—on Damages and Bad Faith filed August 12, 2009 (plaintiff's August 12 Motion or Pl.'s Aug. 12 Mot.). Plaintiff also filed a Motion to Amend Reconsideration for Damages and Bad Faith on September 1, 2009 (plaintiff's September 1 Motion or Pl.'s Sept. 1 Mot.) and a Motion for Litigation of Bad Faith and Motion to Amend Previous Motion of Reconsideration to Include this Motion on Septem-

ber 4, 2009 (plaintiff's September 4 Motion or Pl.'s Sept. 4 Mot.).[1] Defendant filed its Opposition to Plaintiff's August 12 Motion on August 28, 2009 (defendant's August 28 Opposition or Def.'s Aug. 28 Opp'n), and, on September 11, 2009, its Opposition to plaintiff's September 1 Motion and plaintiff's September 4 Motion (defendant's September 11 Opposition or Def.'s Sept. 11 Opp'n).[2]

Plaintiff moves the court for reconsideration of the court's July 28, 2009 Opinion, *Pinckney v. United States* (*Pinckney* or Opinion), 88 Fed.Cl. 490 (2009). Pl.'s Aug. 12 Mot. 1. In *Pinckney*, this court concluded that the United States acting through the United States Postal Service (government, defendant or USPS) improperly terminated plaintiff's contract for default. *Pinckney*, 88 Fed.Cl. at 516. Plaintiff's termination for default was converted to a termination for convenience and plaintiff was awarded damages in the amount of $10,094.31 plus interest. *Id.* Plaintiff filed the Motions for Reconsideration, asserting that defendant acted in bad faith, and seeking additional damages. Pl.'s Aug. 12 Mot. 1. For the following reasons, plaintiff's Motion for Reconsideration is DENIED.

I. Background

Plaintiff's Motion for Reconsideration is before this court following a trial in Charleston, South Carolina on January 22–23, 2009, for breach of contract against the government. *Pinckney*, 88 Fed.Cl. at 492. The court concluded that the USPS improperly terminated plaintiff's contract for default. *Id.* at 516. The termination for default was converted to a termination for convenience and plaintiff was awarded damages in the amount of $10,094.31 plus interest. *Id.* The facts of this case are set forth in detail in *Pinckney*, 88 Fed.Cl. at 494–504, but are

briefly discussed below to provide context for this opinion.

This case concerns the events of Saturday, July 2, 2005 and plaintiff's subsequent termination. *Id.* at 494. At approximately 10:30 a.m., on July 2, 2005, plaintiff left the Pawleys Island Post Office to deliver mail to residential and commercial mailboxes. *Id.* at 495. Shortly thereafter, she called Postmaster Todd Lee to inform him that she was unable to deliver the mail because certain boxes were blocked by people and cars. *Id.* Mr. Lee directed plaintiff to complete the rest of her route and then return to the blocked mailboxes and attempt delivery a second time. *Id.* Plaintiff finished her route and returned to the post office around 1:20 p.m., later testifying that "there was no mail left at her case, other than a tub of hold mail."[3] *Id.* at 496 (internal quotation omitted).

Postmaster Lee testified that Ms. Fox, a USPS employee, told him that Ms. Pinckney had returned to the post office with quite a bit of mail. *Id.* at 497. Mr. Lee testified that when he arrived at the office on the afternoon of July 2, 2005, there was a flat tub with mail in it sitting on his desk containing 102 pieces of undelivered mail.[4] *Id.* Ms. Fox and Mr. Kirchner, both USPS employees, testified that there were stacks of mail on the conference table, but Ms. Fox further testified that she could not confirm that the mail on the table was plaintiff's mail that plaintiff had not delivered. *Id.* at 498. Mr. Lee testified that he documented the mail plaintiff had failed to deliver and then left the office to deliver the undelivered mail. *Id.* at 498–99. He testified that none of the mailboxes along plaintiff's route were blocked and that he was able to deliver all of the mail. *Id.* at 499.

---

1. Plaintiff's Motions for Reconsideration are all substantively the same and the court will address the motions collectively. Citations will specify the Motion by filing date.

2. Defendant's August 28 Opposition and defendant's September 11 Opposition are substantively the same and will be addressed collectively. Citations will specify the Opposition by filing date.

3. "Hold mail" is mail that is held by the Post Office at the request of the recipient because, for example, the recipient is out of town.

4. However, Mr. Lee testified that some of the mail that was not delivered was addressed to addresses that either had a hold order with the USPS or were businesses that did not receive Saturday delivery.

Mr. Lee submitted a vehicle timecard documenting the miles he traveled to deliver the mail which plaintiff had not delivered. *Id.* at 500. Mr. Lee's reimbursement request was reviewed and approved by his supervisor, Bruce Fowler. *Id.* Mr. Lee was reimbursed by USPS for the travel so documented. *Id.*

Mr. Lee filed an incident report on July 5[5] recording his version of the events of July 2, 2005. *Id.* at 498–99. Mr. Lee testified that he contacted Mr. Harris, the Manager of Transportation Contracts for the Eastern Area of the USPS (an area encompassing Pawleys Island, South Carolina), on Tuesday July 5, 2005, and recommended that plaintiff be terminated. *Id.* at 499. Mr. Harris confirmed that on July 5, 2005, Mr. Lee informed him of "the incident" with Ms. Pinckney and recommended that Ms. Pinckney be terminated. *Id.* at 499–500. Mr. Lee testified that he recommended plaintiff be terminated because plaintiff failed to meet her obligations under her contract, and that, in his opinion, that failure was a severe violation. *Id.* at 500.

After speaking with Mr. Lee, Mr. Harris sent Ms. Pinckney a Show Cause Notice requesting that plaintiff provide a written explanation of her actions on July 2. *Id.* He testified that the purpose of the Show Cause Notice was to gather as much information as possible in order to determine what happened on July 2, 2005. *Id.* Mr. Harris testified that he issues approximately forty show cause notices per year and that approximately seventy percent of Show Cause Notices result in termination. *Id.* Mr. Harris further testified that if a supplier, such as plaintiff, understands that a mistake occurred and takes the necessary steps to correct the problem, termination is unlikely. *Id.*

The Show Cause Notice stated that plaintiff "returned to the office with mail for approximately 25 houses.... This undelivered mail included 53 pieces of first class mail." *Id.* at 501 n. 7. Plaintiff responded to the Show Cause Notice on July 13, 2005. *Id.* at 501. In her response to the Show Cause Notice, plaintiff alleged that "when she called

Postmaster Lee on July 2, 2005 to inform him that she was unable to deliver some of the mail he became hostile and she hung up the phone." *Id.* at 501 n. 8. She further stated, "I NEVER, NEVER, NEVER FAIL TO DELIVER THE U.S. MAIL. I DID NOT SKIP ANY MAILBOX THAT I COULD DELIVER TO. I'VE PROVEN MY COMMITMENT TO THE U.S. POSTAL SERVICE OVER THE YEARS, WITHOUT QUESTION." *Id.* at 501 (emphasis in original). Plaintiff also stated, "These false accusation[s] by Postmaster Todd Lee [are] to besmirch my character, ruin my career with the U.S. Postal Service. Please consider the facts, one day he's praising me for my good works, the next day he's speaking words of anger." *Id.* at 501 n. 8.

On August 8, 2005, Harris sent plaintiff a letter terminating her employment contract. *Id.* at 503. The termination letter stated that plaintiff did not deliver all deliverable mail on July 2, 2005 and that plaintiff "did not adequately address the issue of non-delivered deliverable mail" in her response to the Show Cause Notice. *Id.* at 503. n. 9. The termination further informed plaintiff of USPS's right to seek damages from plaintiff if such non-performance was found to constitute a breach of contract. *Id.* Further, the letter informed Ms. Pinckney that she could bring an action against USPS if she believed she was terminated improperly. *Id.*

Plaintiff brought a claim for breach of contract against the government, and a trial was conducted in Charleston, South Carolina on January 22–23, 2009. *Id.* at 492. The court considered four issues at trial: (1) whether termination of plaintiff for default was proper, *id.* at 507–14, (2) whether the government acted in bad faith, *id.* at 514–16; (3) what was the appropriate measure of damages, *id.* at 516; and (4) whether defendant was entitled to recover reprocurement costs for the terminated contract, *id.* The court found that USPS had improperly terminated plaintiff's contract for default. *Id.* at 516. The court also found that plaintiff was unable to meet her burden and establish

---

**5.** Because of the July 4 holiday, Tuesday, July 5 was the workday immediately following Satur-day, July 2.

by clear and convincing evidence that either Mr. Harris or Mr. Lee acted with specific bad faith. *Id.* at 516. The court found that plaintiff was entitled to $10,094.31 in damages and that, because defendant improperly terminated plaintiff, defendant could not prevail on its counterclaim for reprocurement costs. *Id.*

In her Motion for Reconsideration, plaintiff asks the court to reconsider the issue of whether the government acted in bad faith. Pl.'s Sept. 1 Mot. 1–5. Specifically, plaintiff alleges that Mr. Lee and Mr. Harris collaborated to terminate her in bad faith. *Id.* at 1. Further, plaintiff asserts that Mr. Lee submitted false addresses with no mail receptacles and no slots. Pl.'s Sept. 1 Mot. 3. Plaintiff asserts that Mr. Lee falsified travel records and submitted false reimbursement requests thereby committing fraud and perjury at trial. *Id.* Plaintiff asserts that the aggregate of these actions, when imputed to the USPS, demonstrate that the government acted in bad faith. Pl.'s Sept. 1 Mot. 4.

## II. Legal Standards

The applicable standards for reconsideration of final decisions are set forth in RCFC 59(a) and RCFC 60(b). RCFC 59(a) provides that rehearing or reconsideration may be granted as follows: "(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." RCFC 59(a)(1). Further, "[t]he court may, on motion under this rule, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." RCFC 59(a)(2). "A motion to alter to amend a judgment must be filed no later than 10 days after the entry of the judgment." RCFC 59(e).

RCFC 60(b) provides that relief from final judgment may be granted if there has been "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." RCFC 60(b)(3). "A motion made under 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." RCFC 60(c).

RCFC 6 provides the rules to compute time periods specified in the RCFC. RCFC 6. The day of the event that begins the period is excluded. RCFC 6(a)(1). Intermediate Saturdays and Sundays are excluded when the time period is fewer than 11 days. RCFC 6(a)(2). The last day of the time period is included. RCFC 6(a)(3). When a party must act within a specified time after service and service is made by mail, 3 days are added after the period of time would otherwise expire. RCFC 5(b)(2)(C), 6(d). A Motion for Reconsideration under RCFC 59 must be filed no later than 10 days after the entry of judgment as computed by RCFC 6. RCFC 59(e).

"The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990). "The court must consider such motion with 'exceptional care.'" *Henderson County Drainage Dist. No. 3 v. United States (Henderson),* 55 Fed.Cl. 334, 337 (2003) (quoting *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. 298, 300 (1999), *aff'd,* 250 F.3d 762, 2000 WL 973619 (Fed.Cir.2000)). "A motion for reconsideration is not intended, however, to give an 'unhappy litigant an additional chance to sway' the court." *Matthews v. United States (Matthews),* 73 Fed.Cl. 524, 525 (2006) (quoting *Froudi v. United States,* 22 Cl.Ct. 290, 300 (1991)). "Motions for reconsideration should not be entertained upon 'the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged.'" *Fru–Con Constr. Corp.,* 44 Fed.Cl. at 300 (quoting *Seldovia Native Ass'n Inc. v. United States,* 36 Fed.Cl. 593, 594 (1996), *aff'd,* 144 F.3d 769 (Fed.Cir.1998)).

■ The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake in fact. *Henderson,* 55 Fed.Cl. at 337; *Principal Mut. Life Ins. Co. v. United States,* 29 Fed.Cl. 157, 164 (1993). "Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." *Matthews,* 73 Fed.Cl. at 526 (citing *Griswold v. United States,* 61 Fed.Cl. 458, 460–61 (2004)). Accordingly, "the movant ... must do more than 'merely reassert[ ] arguments which were previously made and carefully considered by the court.'" *Bannum, Inc. v. United States (Bannum),* 59 Fed.Cl. 241, 243 (2003). A court "will *not* grant a motion for reconsideration if the movant 'merely reasserts ... arguments previously made ... all of which were carefully considered by the Court.'" *Ammex, Inc. v. United States,* 52 Fed.Cl. 555, 557 (2002) (quoting *Principal Mut. Life Ins. Co.,* 29 Fed.Cl. at 164) (emphasis and omissions in original).

■ Further, even a pro se party may not "prevail on a motion for reconsideration by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed." *Matthews,* 73 Fed.Cl. at 525–26 (citing *Lamle v. Mattel, Inc.,* 394 F.3d 1355, 1359 n. 1 (Fed.Cir.2005)). Similarly, a motion for reconsideration "should not be based on evidence that was readily available at the time the motion was heard." *Seldovia Native Ass'n Inc.,* 36 Fed.Cl. at 594.

■ Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is "apparent to the point of being almost indisputable." *Pac. Gas & Elec. Co. v. United States,* 74 Fed.Cl. 779, 785 (2006). In a motion for reconsideration, under RCFC 59(a), "manifest" is understood as "clearly apparent or obvious." *Ammex, Inc. v. United States,* 52 Fed.Cl. 555, 557 (2002) (quoting *Principal Mut. Life. Ins. Co.,* 29 Fed.Cl. at 164). "Where reconsideration is sought due to manifest injustice, the mov-

ing party can only prevail if it demonstrates that the injustice from the case is 'apparent to the point of being almost indisputable.'" *Shirlington Limousine & Trans., Inc. v. United States,* 78 Fed.Cl. 27, 31 (2007) (quoting *Pac. Gas. & Elec. Co. v. United States,* 74 Fed.Cl. 779, 785 (2006)).

### III. Discussion

#### A. Timeliness

■ A Motion for Reconsideration under RCFC 59(a)(1)(A) or (B) must be filed within 10 days after the entry of judgment. RCFC 59(e). Judgment was entered in favor of plaintiff on July 30, 2009. Docket No. 90. The 10–day time limit began to run the next day, July 31, 2009, and excluded all intermediate Saturdays and Sundays. *See* RCFC 6(a)(2). Counting in accordance with RCFC 6, the tenth day fell on August 13, 2009. Because Ms. Pinckney is a pro se litigant, service of the judgment was mailed to plaintiff's last known address. *See* RCFC 5(b)(C). Plaintiff's Motion for Reconsideration must have been received by the court no later than August 17, 2009 in order to be timely. Plaintiff faxed her August 12 Motion to the courthouse on August 10, 2009. Plaintiff's faxed August 12 Motion was filed by leave of the court on August 12. Docket. No. 93. Plaintiff's Motion was filed within the 10–day limit required under 59(e) and was therefore timely filed.

#### B. There Has Been No Change In Controlling Law

■ In *Keeter Trading Co. v. United States (Keeter II),* 85 Fed.Cl. 613, 614 (2009), the Court of Federal Claims found that the USPS improperly terminated the plaintiff's contract for default and acted in bad faith. In *Keeter II,* the court found that although the postmaster had not authorized the termination of plaintiff's contract the representations and recommendations of the postmaster directly resulted in the wrongful termination of the contractor. *Keeter II,* 85 Fed.Cl. at 619. Specifically, the court found that "in collaborating with the [postmaster], and failing to exercise an independent and informed judgment, the contracting officials violated

the government's duty of good faith performance, and thus acted in bad faith in the administration of the contract at issue." *Id.* at 625.

> If the aggregate of the actions of all the agents would, if done by one individual, fall below the standard of good faith, the entity for whom the various agents acted should be held to have violated that standard. It is the responsibility of the entity, the principal, to so coordinate the work of its agents that the aggregate of their actions will conform to required legal standards.

*Struck Constr. Co. v. United States (Struck),* 96 Ct.Cl. 186, 221 (1942). In order to prove bad faith, a plaintiff must provide "clear and convincing" evidence of improper motive on the part of the government because "showing a government official acted in bad faith is intended to be very difficult." *Am–Pro Protective Agency, Inc. v. United States,* 281 F.3d 1234, 1240 (Fed.Cir.2002). "To rebut such a presumption ... a showing of 'irrefragable proof' of acts of bad faith is required." *Abcon Assoc., Inc. v. United States,* 49 Fed.Cl. 678, 688 (2001) (quoting *Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 198, 543 F.2d 1298 (1976)).

■ Plaintiff urges the court to consider *Struck,* where the court found bad faith, based on the aggregate actions of government officials. Plaintiff also draws attention to *Keeter Trading Co., Inc. v. United States (Keeter I),* 79 Fed.Cl. 243 (2007). *See* Pl.'s Aug. 12 Mot. 6. *Struck* and *Keeter I* were considered by the court during trial. *Pinckney,* 88 Fed.Cl. at 514–15. In its Opinion the court cites both *Struck* and *Keeter I* as setting forth the appropriate standard to determine whether the government acted in bad faith. *Id.* The court considered the aggregate actions of Mr. Lee and Mr. Harris under the *Struck* standard, and found that there was insufficient evidence in the aggregate to establish bad faith on behalf of the government. *Id.* There has been no change in the applicable law since trial, and plaintiff is not entitled to reconsideration on the ground of "an intervening change in the controlling law...." *Matthews,* 73 Fed.Cl. at 526.

## C. There is No Previously Unavailable Evidence

■ In plaintiff's Motions for Reconsideration, she states that "[t]he court did not allow [her] the opportunity to litigate or establish bad faith facts." Pl.'s Sept. 4 Mot. 1. During the trial, "plaintiff testified to her concerns about the intent with which Mr. Lee acted." *Pinckney,* 88 Fed.Cl. at 515 (citing Tr. 247:20–248:23, 300:22–301:6, 308:8–13 (Ms. Pinckney)). Plaintiff specifically asserted bad faith at trial:

> And they were trying to fire me, and most of it was politically motivated, because one day there is no way you could give me an upbeat evaluation and the following week here you're hoping for me to be terminated without even understanding what the crisis [is] or addressing what it is that is really alarming me.

*Id.* at 515 (quoting Tr. 248:16–22 (Ms. Pinckney)). Plaintiff further stated that "citizens on the route, you know, that advised me-one told me, said Wonderlyn, you're working with a Judas, and at the time I didn't know what they meant, but now I know." *Id.* (quoting Tr. 247:20–248:2 (Ms. Pinckney)).

The court considered the issue of bad faith at trial, finding that plaintiff did not meet her burden to establish bad faith. *Id.*

> While defendant [did] not prove[ ] by a preponderance of the evidence that plaintiff's termination for default was justified, plaintiff [did] not prove[ ] by clear and convincing evidence that either Mr. Harris or Mr. Lee acted in bad faith. Although plaintiff testified to her concerns about the intent with which Mr. Lee acted, the evidence at trial did not effectively serve to corroborate Ms. Pinckney's concerns. Plaintiff [did] not show[ ] by clear and convincing evidence that either Mr. Harris or Mr. Lee acted with a specific intent to injure plaintiff or that the government's conduct was "designedly oppressive" or "initiated a conspiracy to get rid of [plaintiff.]"

*Id.* at 515–16. The court heard testimony regarding the issue of defendant's bad faith and determined that plaintiff was unable able to establish by clear and convincing evidence that the government acted in bad faith. *Id.*

Plaintiff raised the issue of bad faith, but did not meet her burden of proof on this issue. Reconsideration is not intended to permit a party to "reassert[ ] arguments which were previously made." *Bannum*, 59 Fed.Cl. at 243. Reconsideration is therefore not appropriate.

Specifically, plaintiff's August 12 Motion for Reconsideration asserts that Mr. Lee acted in bad faith because he submitted an allegedly fraudulent record for transportation reimbursement from July 2, 2005. Pl.'s Aug. 12 Mot. 1, 3. This issue was brought up at trial when Ms. Pinckney testified that "Mr. Todd Lee, he filed expenses that he delivered those addresses and I know for a fact ... he didn't deliver all of them and there wasn't [any] mail. He just committed a fraud." Tr. 338:7–12 (Ms. Pinckney). The court considered plaintiff's testimony at trial and found that she was unable to establish by clear and convincing evidence that Mr. Lee had acted to defraud the government by submitting falsified travel expense reports. *See Pinckney*, 88 Fed.Cl. at 515–16; Tr. 338:7–12 (Ms. Pinckney).

A party, even a pro se party, cannot prevail on a motion for reconsideration by raising an issue that was litigated, or could have been litigated at the time the complaint was filed. *Matthews*, 73 Fed.Cl. at 525–26. Throughout her Motions for Reconsideration, plaintiff fails to raise an issue, or point to new evidence that was not considered at trial. Pl.'s Mot. *passim.* Even considering Mr. Pinckney's status as a pro se plaintiff, the court can discern no new evidence since the trial. *See, e.g., Matthews*, 73 Fed.Cl. at 525–27 (construing pro se plaintiff's pleadings liberally but nevertheless finding that a pro se plaintiff can not prevail on reconsideration by offering previously available evidence). There is no previously unavailable evidence, therefore reconsideration is inappropriate.

### D. Plaintiff is Unable to Demonstrate Manifest Injustice

 Plaintiff has likewise failed to demonstrate that there has been manifest injustice. Plaintiff asks the court to act justly and fairly. Pl.'s Mot. *passim.* There is nothing that the plaintiff points to, or that the court can discern, that approaches the requisite level of injustice needed to support reconsideration. *See Pac. Gas & Elec. Co.*, 74 Fed. Cl. at 785. Plaintiff is dissatisfied with the result of trial, but dissatisfaction does not warrant reconsideration. *See Shirlington Limousine & Trans., Inc.*, 78 Fed.Cl. at 31; *Seldovia Native Ass'n Inc.*, 36 Fed.Cl. at 594. Plaintiff fails to establish manifest injustice with the nearly indisputable proof necessary to prevail on a motion for reconsideration. *See Shirlington Limousine & Trans., Inc.*, 78 Fed.Cl. at 31.

Plaintiff has asserted the same arguments that were made at trial. *See Pinckney*, 88 Fed.Cl. at 514–16. At trial, Ms. Pinckney was unable to meet the high burden required to establish that a government official has acted in bad faith. *Id.* Because a motion for reconsideration is "not intended ... to give an 'unhappy litigant an additional chance to sway' the court," *Matthews*, 73 Fed.Cl. at 525 (quoting *Froudi*, 22 Cl.Ct. at 300), or to "reassert[ ] arguments which were previously made and carefully considered by [that] court," *Bannum, Inc.*, 59 Fed.Cl. at 243 (quoting *Henderson*, 55 Fed.Cl. at 337), this argument does not justify reconsideration of the Opinion.

### IV. Conclusion

Because plaintiff's Motion for Reconsideration failed to show the occurrence of an intervening change in the controlling law, the availability of previously unavailable evidence, or the necessity of allowing the motion to prevent manifest injustice caused by a manifest error of law or mistake in fact, plaintiff's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.