**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,**

and

**Entergy Nuclear Indian Point 2, LLC, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 03–2622C, 04–33C.**

United States Court of Federal Claims.

July 9, 2010.

David A. Churchill, with whom were Julie M. Carpenter, Thomas H. Kim, and Adam G. Unikowsky, Jenner & Block LLP, Washington, D.C., for Plaintiff Consolidated Edison Company of New York, Inc.

Alex D. Tomaszczuk, with whom were Jay E. Silberg, Daniel S. Herzfeld, Jack Y. Chu, Esther K. Yeu, and Evan D. Wesser, Pillsbury Winthrop Shaw Pittman LLP, McLean, Virginia and Washington, D.C., L. Jager Smith, Jr., Wise Carter Child & Caraway, P.A., Jackson, Mississippi, Of Counsel, for Plaintiff Entergy Nuclear Indian Point 2, LLC.

Andrew P. Averbach and Patrick B. Bryan, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Alan J. Lo Re, Assistant Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., Jane K. Taylor, Harold D. Lester, Joseph E. Ashman, Scott R. Damelin, Michelle R. Milberg, Anthony W. Moses, Shari A. Rose, and Scott D. Slater, Of Counsel, for Defendant.

## OPINION AND ORDER ON CONSOLIDATED EDISON'S MOTION FOR RECONSIDERATION

WHEELER, Judge.

In this spent nuclear fuel case, the Court issued its decision on May 17, 2010 awarding damages to Plaintiffs Consolidated Edison Company of New York, Inc. ("Con Ed") and Entergy Nuclear Indian Point 2, LLC ("Entergy") for the Department of Energy's breach of contract in failing to collect and dispose of spent fuel at the Indian Point nuclear plant near New York City. *Consol. Edison Co. of NY, Inc. v. United States,* 92 Fed.Cl. 466, 473–74 (2010). On June 3, 2010, Con Ed filed a motion for partial reconsideration pursuant to Rule 59(a)(1) of the Court of Federal Claims ("RCFC") alleging that the Court did not adequately address one of Con Ed's alternative arguments regarding Private Fuel Storage ("PFS") costs. Defendant filed an opposition to Con Ed's motion on June 22, 2010, and Con Ed filed a reply on June 29, 2010.

To prevail upon a motion for reconsideration, the moving party must demonstrate a clearly apparent or obvious error of law, or a mistake of fact. *Pac. Gas and Elec. Co. v. United States,* 58 Fed.Cl. 1, 2 (2003); *Ammex, Inc. v. United States,* 52 Fed.Cl. 555, 557 (2002). To meet this standard, the movant must show "an intervening change in the controlling law, the availability of previously unavailable evidence, or the necessity of allowing the motion to prevent manifest injustice." *Matthews v. United States,* 73 Fed.Cl. 524, 526 (2006) (citing *Griswold v. United States,* 61 Fed.Cl. 458, 460–61 (2004)). The movant "must do more than 'merely reassert [ ] arguments which were previously made and were carefully considered by the court." *Bannum, Inc. v. United States,* 59 Fed.Cl. 241, 243 (2003) (quoting *Henderson County Drainage Dist. No. 3 v. United States,* 55 Fed.Cl. 334, 337 (2003)) (alteration in original). A motion for reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court." *Prati v. United States,* 82 Fed.Cl. 373, 376 (2008) (internal quotations omitted). The motion "should not be based on evidence that was readily available at the time the motion was heard." *Seldovia Native Ass'n v. United States,* 36 Fed.Cl. 593, 594 (1996). However, a party "may not prevail on a motion for reconsideration 'by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed.'" *Six v. United States,* 80 Fed.Cl. 694, 697 (2008) (quoting *Matthews,* 73 Fed.Cl. at 525).

At trial, Con Ed sought to recover $5,942,900 for its contributions from 1994 to

2001 to PFS, an initiative launched by a consortium of utilities to develop a private off-site dry fuel storage facility. *Consol. Edison Co.*, 92 Fed.Cl. at 486–87. The Court found that Con Ed's investment in PFS was "a prudent mitigation effort," but that Con Ed transferred its interests in PFS to Entergy on September 6, 2001 (the Indian Point sale date) "for value received." *Id.* at 492–93. Con Ed contended that it received no money for the PFS transaction, but its witness, Mr. Sanchez, testified that the PFS investment had a value of "at least" $6 million. (Sanchez, Tr. 371–72.) Entergy also had investigated the value of PFS, and was aware of the amount of Con Ed's investment. (Rives, Tr. 1838, 1845.) The parties' Assignment Agreement lacks a specific price for PFS, but the overall Indian Point purchase price of $602 million included Entergy's payment for the PFS asset. *Consol. Edison Co.*, 92 Fed.Cl. at 492–93. Con Ed thus received compensation from Entergy in 2001 for the value of the PFS investment, and should not recover a second time from Defendant.

Con Ed's alternative argument appears to be that, even if the PFS investment has value (as the Court found), the investment still was an expense in mitigation of the Department of Energy's breach. Therefore, the value of the PFS investment must have increased Entergy's purchase price to $602 million, a price that the Court found was not affected by the breach. According to Con Ed, if the PFS asset had not been included in the sale, Entergy's price might have been less than $602 million, in which case the price would have had a "diminished value" affected by the breach. Thus, Con Ed says, even though it received value for its PFS investment in Entergy's $602 million purchase price, Defendant nevertheless should compensate Con Ed again for the PFS investment. (Con Ed's Mot. 3–6.) Con Ed submits that Defendant's reimbursement for the PFS investment would not constitute a second recovery, because the inclusion of PFS in the Indian Point sale only enabled Con Ed to receive a fair price compensating it for the breach. *Id.*

Con Ed's argument does not meet the standard for granting a motion for reconsid-

eration. Con Ed has failed to demonstrate any intervening change in the controlling law, any previously unavailable evidence that is now available, or any necessity to prevent manifest injustice. *See Matthews*, 73 Fed.Cl. at 526. Con Ed simply is repeating arguments that it made unsuccessfully at trial, based upon factual assumptions that the Court already has rejected. There is no evidence to support Con Ed's alternative theory.

First, Con Ed's argument is predicated on the factual assumption that the Department of Energy's breach caused a diminished value in the Indian Point sales price, (Con Ed Mot. 11), but the Court previously rejected this assumption in its May 17, 2010 decision. *Consol. Edison Co.*, 92 Fed.Cl. at 495–96 ("[T]he Court finds that Con Ed's diminished value claim fails for lack of causation."); *Id.* at 497–98 ("Entergy expressly assumed in its Indian Point valuation model that it would recover from DOE any spent fuel dry storage costs through litigation or settlement."); *Id.* ("Thus, costs for dry fuel storage were not included in Indian Point's financial model, effectively removing any impact of DOE's delay from its valuation of the plant."); *Id.* (Entergy "gave no value to spent fuel storage issues in formulating its Indian Point purchase price."); *Id.* at 498–99 (Any diminished value in the sales price "is attributable to the plant's poor operating condition.").

Second, Con Ed's argument also is predicated on the factual assumption that the PFS asset allowed Entergy to continue mitigating the effects of DOE's breach at Indian Point, (Con Ed's Mot. 5), but the Court similarly rejected this assumption. *Consol. Edison Co.*, 92 Fed.Cl. at 512–13. The PFS asset had no value to Entergy as a means of mitigating DOE's breach at Indian Point because Entergy already had decided to construct a dry storage facility at Indian Point. *Id.* Entergy did not need an off-site storage facility for Indian Point's spent fuel. Instead, as the Court found, "Entergy regarded PFS as a potential off-site storage solution for its entire fleet of nuclear plants, but not for Indian Point specifically." *Id.* at 512–13; *see also S. Cal. Edison Co. v. United States*, No. 04–0109, 93 Fed.Cl. 337, 361, 2010

WL 2265575 at *27 (Fed.Cl. June 3, 2010) (similarly concluding that a nuclear plant owner invested in PFS for reasons other than to mitigate the effects of DOE's delay).

Third, Con Ed maintains that it did not receive any value for its transfer of the PFS investment to Entergy. (Con Ed's Mot. 3.) In somewhat circular fashion, Con Ed agrees that the Assignment Agreement is "for value received," and that its witness, Mr. Sanchez, acknowledged a PFS value of "at least" $6 million. (Sanchez, Tr. 371–72.) However, Con Ed still argues that the sale to Entergy "did nothing to reimburse Con [Ed] for the $6 million that Con [Ed] actually paid to procure the PFS rights." (Con Ed's Mot. 3.) Con Ed's factual assumptions in advancing this position are contrary to the Court's findings of fact. The Court already has considered and rejected all of the factual underpinnings of Con Ed's motion for reconsideration.

Moreover, as the Court noted in its May 17, 2010 decision, Con Ed transferred the PFS interest to Entergy voluntarily. *Consol. Edison Co.*, 92 Fed.Cl. at 492–93. Nothing required Con Ed to include its PFS interest as part of the Indian Point sale. Con Ed could have kept its PFS asset, or it could have offered the PFS interest to any willing buyer at any time, including any of the other PFS investors. Instead of recouping its PFS investment from Entergy or another buyer, Con Ed could have pursued its claim for PFS costs against Defendant. Having received value for the PFS interest from Entergy, Con Ed cannot recover these costs again from Defendant.

For the foregoing reasons, Con Ed's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.