The OSAGE TRIBE OF INDIANS OF OKLAHOMA, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Nos. 99–550 L, 00–169 L.

United States Court of Federal Claims.

Feb. 8, 2011.

Wilson K. Pipestem, Washington, DC, for plaintiff. Merrill C. Godfrey, Washington, DC, and James P. Tuite, Washington, DC, of counsel.

Joseph H. Kim, with whom were Ignacia S. Moreno, Assistant Attorney General, Romney S. Philpott and Brian M. Collins, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC, for defendant.

## ORDER

HEWITT, Chief Judge.

Before the court are Defendant's Motion for Partial Reconsideration (defendant's Motion or Def.'s Mot.), Docket Number (Dkt. No.) 610, filed on January 14, 2011, and Osage Nation's Response to the United States' Motion for Partial Reconsideration (plaintiff's Response or Pl.'s Resp.), Dkt. No. 618, filed on January 27, 2011.

## I. Background

The court's Opinion of December 29, 2010 (Opinion) resolved three factual disputes identified by the court "during its consideration of plaintiff's motion for summary judgment on damages owed to plaintiff ... stemming from defendant's breach of its fiduciary duty to collect, deposit and invest revenues generated from Osage oil leases." Opinion of Dec. 29, 2010, at 394. These three factual disputes have been broadly characterized by the court as the Koch data issue, the gravity adjustment issue and the interest credit issue. *Id.* at 394–95. Defendant requests that the court reconsider the portion of its Opinion analyzing the gravity adjustment issue, specifically "Whether Mr. Reineke's Use of the Gravity–Adjustment Scales from the Joint Database for Koch Transactions Is Reasonable." *See* Def.'s Mot. 1; *see generally* Opinion of Dec. 29, 2010 at 444–48.

In *Osage Tribe of Indians of Oklahoma v. United States (Osage II )*, 72 Fed.Cl. 629, 631 (2006), the court held that "the United States violated its duty as trustee of the Osage mineral estate by failing to collect all moneys due from Osage oil leases and to deposit and invest those moneys as required by statute and according to the fiduciary duty owed to the Osage Tribe." In an effort to determine royalty values in accordance with the law of *Osage II*—and as a result of defendant's failure to collect and maintain data required of it under regulations that were in effect from January 1981 to September 12, 1990, 25 C.F.R. § 183.11(a)(2) (1975) (1974 Regulations)—defendant's expert (Mr. Martin) and plaintiff's expert (Mr. Reineke) developed a Joint Database, Opinion of Dec. 29, 2010 at 400–01. However, the Joint Database lacked certain data relevant under the 1974 Regulations. *Id.* Plaintiff subpoenaed Koch Industries, Inc. (Koch), a major oil purchaser, to help supply this information. *Id.* Koch provided plaintiff with "Top 50 Lists" for each day from January 1981 to December 1990. *Id.*

In connection with their generation of the Joint Database, the experts also "developed gravity-adjustment scales for each month for each of the major purchasers." *Id.* at 401. Ideally, Mr. Reineke and Mr. Martin would have had available to them "the gravity scales for each and every purchaser for all the timeframes and ... the 40[-]degree price for each purchaser," June 30 and July 1, 2010 Revised and Corrected Transcript (Tr.) 309:20–24 (Mr. Reineke), Dkt. Nos. 575, 577; however, because this information was unavailable, the experts "determined the posted prices and gravity tables from the various pricing bulletins of the major purchasers or published reports of pricing bulletins," Def.'s Resp. to Pl.'s Am. Mot. for Partial Summ. J. (Def.'s Resp.), Dkt. No. 420, Ex. A (Decl. and Expert Rpt. of Ronnie A. Martin) ¶ 19; *see also* id. ¶ 11. In accordance with the court's *Osage II* ruling, Mr. Martin and Mr. Reineke

applied these gravity scales to each of the transactions in the Joint Database to normalize the highest offered prices to the 40–degree gravity standard. Opinion of Dec. 29, 2010 at 401–03, 444–45.

In its response to plaintiff's May 18, 2009 amended motion for summary judgment, defendant argued that Mr. Reineke "created fabricated 40–degree prices when he gravity-adjusted prices from the Joint Database from certain transactions involving Koch." Def.'s Mot. 2 (citing Opinion of Dec. 29, 2010 at 402–03); see Def.'s Resp. at 17–18. In the court's opinion on plaintiff's amended motion for summary judgment, the court stated that defendant was "asking the court to draw an inference against the Tribe that is not supported by the evidence and is likely contrary to the facts." Osage Tribe of Indians of Oklahoma v. United States (Osage IV), 93 Fed.Cl. 1, 21 (2010); see generally Pl. Osage Nation's Amended Mot. for Summ. J. on all Oil–Royalty Under–Collection Claims for July 1974 to Dec. 2000 and all Deposit–Lag, Excessive–Cash–Balance, and Investment–Yield Claims for Accounts 7386 and 7886 for United States Fiscal Years 1973 to 1992, Dkt. No. 407.

On April 26, 2010, just prior to the court's issuance of Osage IV, defendant filed a Further Motion Regarding Koch Data, Dkt. No. 514. See Opinion of Dec. 29, 2010 at 404–05; Def.'s Mot. 3. Pursuant to discussions held in telephonic status conferences on May 4 and May 5, 2010, the court issued an order granting defendant access to the tables and fields within Koch's crude oil database that were used in developing the Top 50 Lists. Opinion of Dec. 29, 2010 at 405–06; Def.'s Mot. 3. Mr. Martin reviewed the recently accessed portions of the Koch crude oil database and concluded that it "corroborated his earlier analysis ... that the 40–degree prices related to certain Koch transactions that [Mr. Reineke] had calculated differed from the actual, historical Koch 40–degree prices." Def.'s Mot. 3; see Opinion of Dec. 29, 2010 at 444–45. In its pretrial filings, defendant indicated that it would be introducing testimony from Mr. Martin showing that the newly accessed Koch data "demonstrated the inaccuracy of Mr. Reineke's price calculations."

Def.'s Mot. 3; see Opinion of Dec. 29, 2010 at 444–45. On June 16, 2010 plaintiff filed a motion in limine, arguing that "Mr. Reineke's methods for gravity adjusting Osage County purchase prices in the Joint Data[b]ase ... are not within the scope of the upcoming trial, because they were already rejected in Osage IV...." Pl. Osage Nation's Mot. in Limine to Exclude Irrelevant Testimony by Def.'s Expert Ronnie Martin, and Mot. to Expedite, Dkt. No. 533, at 2. In response, the court denied plaintiff's motion in limine "[i]n light of the new [Koch] information that defendant ha[d] obtained," and ordered that Mr. Reineke be made available for deposition regarding gravity adjustment. Order of June 21, 2010, Dkt. No. 539, at 2.

At the June 30 and July 1, 2010 trial, defendant argued that using the actual 40–degree prices found within the Koch database, rather than the 40–degree prices calculated by Mr. Reineke using the Joint Database gravity scales, results in " 'the most accurate calculation possible' " for Koch transactions. Opinion of Dec. 29, 2010 at 445 (quoting Tr. 549:22–25 (Mr. Martin)); see Tr. 549:1–18 (Mr. Martin) (stating that, although he had used the Joint Database gravity scales in his 2009 expert report, he has found "more accurate data from the Koch [T]op 50 [Lists]," that allowed him to "simply substitute[ ] the 40[-]degree price that Koch had for Osage leases into Mr. Reineke's model instead of the 40[-] degree price that [Mr. Reineke] calculated [from the Joint Database gravity-adjustment scales]").

Plaintiff countered that both Mr. Reineke and Mr. Martin had consistently used the "agreed-to gravity scales" in the Joint Database "to calculate gravity-adjusted offered prices using the purchase prices of major purchases in the Joint Database." Opinion of Dec. 29, 2010 at 446 (internal quotations omitted). Citing the Rebut[t]al Expert Report of Daniel T. Reineke, P.E. (Reineke Rebuttal Report or Reineke Rebuttal Rpt.), Dkt. No. 547, plaintiff argued that using the Koch 40–degree prices for Koch transactions, while "still using the [J]oint [D]atabase gravity scales for all other purchasers[,] skews the gravity adjustments in favor of the United States." Pl. Osage Nation's Post–Trial

Br. (Pl.'s Br.), Dkt. No. 570, at 17 (quoting Reineke Rebuttal Rpt. 2). Mr. Reineke's Rebuttal Report also stated that "[i]f 40–degree price data were available for all major purchasers in the [J]oint [D]atabase, so that Mr. Martin's new approach could be applied consistently, it is likely that prices from one or more of those other purchasers would offset the changes in Koch prices Mr. Martin is making." Reineke Rebuttal Rpt. 2; *see* Pl.'s Br. 17 ("[O]dds are that if similar data were available for another major purchaser, the data would go the other way.").

The court did not view the existence of any potential agreement "between the experts regarding the use and application of the Joint Database gravity-adjustment scales prior to the identification of the Koch 40–degree prices" as governing the parties' dispute. Opinion of Dec. 29, 2010 at 447. Instead, the court emphasized the government's refusal "to assist plaintiff in developing the Top 50 List information or any other information about offered prices by major purchasers." *Id.* The court found it "appropriate" to limit the application of the "40–degree prices Mr. Martin identified in the Koch database . . . [to] the calculation of damages based on the Koch Top 50 List prices." *Id.* Holding that defendant "may not now use the Koch information to reduce plaintiff's damages based on the Joint Database," the court ordered the parties to "calculate damages using the 40–degree prices that are found in the Koch database for Koch Top 50 List transactions and otherwise [to] calculate damages based on the 40–degree prices calculated by Mr. Reineke using the Joint Database gravity-adjustment scales." *Id.*

## II. Legal Standards

Rules 59(a) and 60(b) of the Rules of the Court of Federal Claims (RCFC) set forth the applicable standard for reconsideration and relief from final judgments or orders. RCFC 59(a) states:

> The court may . . . grant . . . a motion for reconsideration on all or some of the issues—and to any party—as follows: (A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; (B) for any reason for

which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1). RCFC 60(b) provides that relief from a final judgment, order or proceeding may be granted "[o]n motion and just terms," for certain enumerated reasons, RCFC 60(b), including "any other reason that justifies relief," RCFC 60(b)(6).

▮ "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990). "The movant . . . must do more than merely reassert[ ] arguments which were previously made and carefully considered by the court," *Bannum, Inc. v. United States,* 59 Fed.Cl. 241, 243 (2003) (alteration in original) (internal quotation omitted), and "[t]he court must consider such motion with exceptional care," *Henderson Cnty. Drainage Dist. No. 3 v. United States,* 55 Fed.Cl. 334, 337 (2003) (internal quotation omitted). "[T]he moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." *Matthews v. United States,* 73 Fed.Cl. 524, 525 (2006). A party seeking reconsideration on the ground of manifest injustice cannot prevail unless it shows that the injustice is "apparent to the point of being almost indisputable." *Griffin v. United States,* 96 Fed.Cl. 1, 7 (2010) (internal quotation omitted).

## III. Discussion

Defendant contends that the court's decision to limit the application of the "40–degree prices Mr. Martin identified in the Koch database . . . [to] the calculation of damages based on the Koch Top 50 List prices," Opinion of Dec. 29, 2010 at 447, results in manifest injustice, Def.'s Mot. 6. The cases defendant cites to support this claim do not involve extreme breaches of trust, as are present here. It is not clear to the court, given defendant's breaches of trust as well as

defendant's failure to assist in supplementing the records available to quantify the damages owed to the beneficiary, that defendant is entitled to reduce the damages it owes plaintiff by relying on data derived from the tables and fields within Koch's crude oil database that were used in developing the Top 50 Lists—data that was located and made available entirely through the efforts of the Tribe, the trust beneficiary.

■ However, given the fact that the admission of the relevant evidence was permitted by the court, *see* Def.'s Mot. 9, the court now determines that defendant shall be permitted to use the 40–degree prices found within the Koch database "regardless of whether those damages were calculated from prices from the Top 50 [L]ists," *id.* at 10.

Consistent with the court's reconsideration of this issue, the PARTIES SHALL FILE a new damages calculation at or before 5:00 p.m. EST, Friday, February 11, 2011. If the parties disagree regarding the foregoing calculation, the PARTIES SHALL FILE a detailed statement explaining the basis of the parties' disagreement at or before 5:00 p.m. EST, Monday, February 14, 2011. Absent a disagreement regarding the foregoing calculation, the PARTIES SHALL FILE an updated calculation of damages through February 18, 2011 and per diem interest thereafter at or before 5:00 p.m. EST, Friday, February 18, 2011. *See* Joint Statement Regarding the Calculation of Damages, Dkt. No. 617, at 1 (stating that "there is no ... disagreement between the parties as to how to calculate damages in accordance with the [court's] Opinions").

The parties are urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy and inexpensive determination of this action. *See* RCFC 1.

IT IS SO ORDERED.