**FILLMORE EQUIPMENT
OF HOLLAND, INC.,
et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 07–341T.

United States Court of Federal Claims.

April 30, 2012.

Thomas E. Redding, Redding & Associates, P.C., Houston, TX, for the plaintiffs.

Jennifer D. Spriggs, Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for the defendant. With her were David I. Pincus, Chief, Court of Federal Claims Section, John A. DiCicco, Principal Deputy Assistant Attorney General, Tax Division, and Kathryn Keneally, Assistant Attorney General, Tax Division.

## ORDER

HORN, Judge.

### FINDINGS OF FACT

Before the court are plaintiffs' motions for reconsideration of an Order issued by Judge Lawrence J. Block in the above captioned case, dismissing certain of plaintiffs' claims, following his decision dismissing *Prati v. United States*, 81 Fed.Cl. 422 (*Prati I*), recons. denied, 82 Fed.Cl. 373 (2008) (*Prati II*), aff'd, 603 F.3d 1301 (Fed.Cir.) (*Prati III*), reh'g en banc denied (Fed.Cir. 2010), cert. denied, —— U.S. ——, 131 S.Ct. 940, 178 L.Ed.2d 754, and cert. denied sub nom. Deegan, et ux. v. United States, —— U.S. ——, 131 S.Ct. 937, 178 L.Ed.2d 754 (2011), as well as 76 other cases. Plaintiffs Fillmore Equipment of Holland, Inc., John A. and Lynn E. Prag, and Donald C. and Elise Stecker filed one complaint under Case No. 07–341T. The particular language of Judge Block's Order filed in the *Prati* case also dismissed the *Fillmore* plaintiffs, and stated, "it is **ORDERED** that all 76 other related cases cited in footnote 2 of this opinion [including the *Fillmore* plaintiffs] are hereby **DISMISSED** for lack of jurisdiction." *Prati I*, 81 Fed.Cl. at 440. Judge Block later vacated judgment in the *Fillmore* case, and in 14 other cases which had been dismissed in his *Prati I* Order, in order to allow them to proceed for *the limited purpose* of pursuing case-specific claims that were not resolved by *Prati I*, which, in the *Fillmore* case, involve naked

and backdated assessments.[1] *See Prati II*, 82 Fed Cl. at 379. The *Fillmore* case was reassigned to the undersigned judge following the denial of *certiorari* and finalization of the *Prati* litigation.

After a status conference with the undersigned Judge, and the filing of an amended complaint, the *Fillmore* plaintiffs filed motions for reconsideration of Judge Block's Order as it applied to them. Plaintiffs assert that reconsideration regarding the *Fillmore* plaintiffs is proper because 1) the court in *Prati I* made "error[s] of apprehension"[2] that their case had been consolidated with *Prati I* and that the facts and legal arguments in the *Fillmore* case and *Prati* were identical, 2) that there have been intervening changes in the law since *Prati I*, *Prati II*, and *Prati III* were "briefed and/or issued," and 3) that reconsideration will avoid a manifest injustice.

The claims brought by the *Fillmore* plaintiffs relate to a number of limited partnerships managed by American Agri–Corp., Inc. (AMCOR). The Internal Revenue Service (IRS) started investigating AMCOR partnerships in 1987 and issued Notices of Final Partnership Administrative Adjustment (FPAA), adjusting the amount of deductions the partnerships could claim on their tax filings on several grounds, including that the partnerships' activities constituted tax motivated transactions. *See Prati III*, 603 F.3d at 1302. Some representatives of AMCOR partnerships challenged the FPAA disallowances in partnership-level proceedings before the United States Tax Court, pursuant to 26 U.S.C. § 6226(b) (2006). *See Prati III*, 603 F.3d at 1302. Other AMCOR partners, such as the Pratis, chose to settle with the IRS, which then assessed applicable taxes and interest. *See Prati III*, 603 F.3d at 1303. The IRS sought additional interest, pursuant to former 26 U.S.C. § 6621(c) (1988) (repealed 1989), which allowed additional interest to be assessed for tax-motivated transactions. *See Prati III*, 603 F.3d at 1303. After paying the assessed taxes and interest pursuant to settlement agreements, the Pratis filed partner-level administrative refund claims with the IRS, which the IRS disallowed. *See Prati III*, 603 F.3d at 1303. In 2001, the Tax Court entered stipulated decisions in the remaining partnership cases upon the IRS's motion that it and the tax matters partners (TMP)[3] for the partnerships had reached an agreement binding all partners meeting the interest requirements of IRC 6226(d), including the Deegans and the *Fillmore* plaintiffs.[4]

---

1. Plaintiffs describe a naked assessment claim as when "the IRS failed to make any determination or conduct any examination regarding the individual taxpayer before assessing the § 6621(c) penalty interest and that portion of the assessment is simply a naked and invalid assessment." The backdated assessment claim alleges that the assessment was made on one date, but a printed transcript from the IRS states that the assessment was made later, after the statute of limitations had expired. The case-specific claims in *Fillmore*, involving naked and backdated assessments, are not addressed in this motion for reconsideration.

2. Black's Law Dictionary defines "apprehension," in this context, as "perception; comprehension; belief." Black's Law Dictionary 117 (9th ed. 2009).

3. "Tax matters partner" is defined at 26 U.S.C. § 6231(a)(7) (2006):

 (7) **Tax matters partner.**—The tax matters partner of any partnership is—**(A)** the general partner designated as the tax matters partner as provided in regulations, or **(B)** if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than 1 such partner, the 1 of such partners whose name would appear first in an alphabetical listing). If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected by the Secretary shall be treated as the tax matters partner. The Secretary shall, within 30 days of selecting a tax matters partner under the preceding sentence, notify all partners required to receive notice under section 6223(a) of the name and address of the person selected.

 26 U.S.C. § 6231(a)(7).

4. The *Prati* plaintiffs chose to settle with the IRS, but other AMCOR partners did not settle, such as the *Deegan* plaintiffs and the plaintiffs in the *Fillmore* case. *See Prati III*, 603 F.3d at 1303. The Deegans had filed a separate complaint in the United States Court of Federal Claims, but joined the Pratis as plaintiffs in *Prati III*, in order to represent before the United States Court of Appeals for the Federal Circuit the issues raised by both unsettled (*Deegan*) and settled (*Prati*) partners. *See Prati III*, 603 F.3d 1301, 1304.

*See Prati III*, 603 F.3d at 1303. As a result, the IRS assessed taxes and interest against the nonsettling partners, including the Deegans and the plaintiffs in the *Fillmore* case.

The Pratis, Deegans, and the *Fillmore* plaintiffs filed suit in the United States Court of Federal Claims seeking tax refunds. A total of 129 AMCOR-partnership tax refund cases were filed by taxpayers in the United States Court of Federal Claims. *See Prati III*, 603 F.3d at 1303. Of the 129 AMCOR cases, 77 of those cases were identified as being factually and legally similar for tax years 1984, 1985 and 1986, including *Prati* and the above captioned *Fillmore* case. *See Prati I*, 81 Fed.Cl. at 425; *Prati III*, 603 F.3d at 1303. The parties selected *Prati v. United States*, Case No. 02–60T, to serve as a representative case, and Judge Block stayed the remaining 76 of the 77 cases, pending a final decision in *Prati*. *See Prati III*, 603 F.3d at 1303. Judge Block stated, "[i]n all 77 of these cases, plaintiffs invested with an AMCOR partnership, claimed a distributive share of a tax deduction from the AMCOR partnership, subsequently had the claimed deductions rejected by the Internal Revenue Service ('IRS'), and then brought suit in [the Court of Federal Claims] for a refund based on the exact same legal grounds that the named plaintiffs in the representative action assert." *Prati I*, 81 Fed. Cl. at 423–24.

In *Prati I*, the plaintiffs raised three primary claims for relief: 1) that their tax assessments were untimely because they were made after the statute of limitations had expired, 2) that the assessment of interest under 26 U.S.C. § 6221(c) was improper because the partnership transactions were not tax-motivated transactions, and 3) that the Secretary of Treasury's refusal to abate the penalty interest was an abuse of discretion. *See Prati I*, 81 Fed.Cl. at 424. Judge Block dismissed the *Prati* plaintiffs' claims, finding that the United States Court of Federal Claims did not have subject matter jurisdiction to adjudicate plaintiffs' claims because they were partnership items, which should have been challenged in partnership-level, rather than in partner-level proceedings, and because 26 U.S.C. § 7422(h) (2006) prohibits

taxpayers from bringing an action for a refund attributable to partnership items in the United States Court of Federal Claims. *See Prati I*, 81 Fed.Cl. at 433, 439–40. In addition to dismissing the *Prati* plaintiffs' claims, as noted above, Judge Block also ordered dismissal of the other 76 cases which were factually and legally similar to *Prati*, including the plaintiffs' claims in the above captioned *Fillmore* case. *See Prati I*, 81 Fed. Cl. at 440 ("[I]t is **ORDERED** that all 76 other related cases cited in footnote 2 of this opinion are hereby **DISMISSED** for lack of jurisdiction.").

The *Prati* plaintiffs moved for reconsideration of Judge Block's decision in *Prati I*, dismissing the *Prati* plaintiffs and the 76 other similar AMCOR cases for lack of subject matter jurisdiction. *See Prati II*, 82 Fed.Cl. at 374. For purposes of efficiency, the plaintiffs requested the motions for reconsideration filed with Judge Block in *Prati* be considered regarding all 77 cases covered and dismissed with the *Prati* opinion. *See Prati II*, 82 Fed.Cl. at 374 n. 2. On June 6, 2008, Judge Block granted that request in an Order deeming the particular motion for reconsideration to have been filed in the 76 other cases. *See Prati II*, 82 Fed.Cl. at 374 n. 2. As an alternative to reconsideration, plaintiffs had requested that Judge Block vacate judgment in all 77 cases covered by the *Prati* opinion and either: 1) stay the cases pending the resolution by the United States Court of Appeals for the Federal Circuit of the jurisdictional issues in *Keener v. United States*, 76 Fed.Cl. 455, 466, 470 (2007) (*Keener I* ), aff'd, 551 F.3d 1358 (Fed.Cir.) (*Keener II* ), reh'g en banc denied (Fed.Cir.), cert. denied, —— U.S. ——, 130 S.Ct. 153, 175 L.Ed.2d 38 (2009), or 2) consolidate the 76 cases under *Prati*, re-enter judgment, and allow the cases to proceed as a single appeal. *See Prati II*, 82 Fed.Cl. at 375. Plaintiffs also filed separate motions to vacate judgment in 15 cases with unresolved taxpayer-specific claims, including the above-captioned *Fillmore* case, "so that plaintiffs might pursue a judgment on matters not covered by the *Prati* opinion." *Prati II*, 82 Fed.Cl. at 375.

Judge Block issued an opinion denying plaintiffs' requests for reconsideration, consolidation, and stays. *See Prati II*, 82 Fed. Cl. at 378–79. Judge Block indicated:

For efficiency sake, these cases were treated together-although never formally consolidated or combined-for the limited purpose of addressing the common legal issues in the pending motions. Accordingly, the *Prati* decision applies to 77 of the 124 AMCOR cases pending before this judge and, therefore, the motion for reconsideration applies to the 77 as well.

*Prati II*, 82 Fed.Cl. at 374 (internal citations omitted; footnotes omitted). Judge Block, however, vacated judgment in 15 of the AMCOR-partnership tax refund cases, including the above captioned *Fillmore* case, "for *the limited purpose* of allowing plaintiffs to pursue any unresolved, case-specific claims that may still be outstanding." *See Prati II*, 82 Fed.Cl. at 379 (emphasis added).[5]

Plaintiffs filed appeals in 57 AMCOR cases in the United States Court of Appeals for the Federal Circuit and moved to stay the appeals pending the Federal Circuit's decision in *Keener II*, a case also involving AMCOR "settled partners," those partners who entered into settlement agreements with the IRS, versus those "unsettled partners" who did not enter into settlements. *See Prati III*, 603 F.3d at 1304. The parties indicated, that " 'this Court's holdings in *Keener* should resolve the jurisdictional issues on appeal in all 58 cases.' " *Prati III*, 603 F.3d at 1304. Plaintiffs' motion to stay was granted by the Federal Circuit. *See Prati III*, 603 F.3d at 1304. In *Keener I*, another trial court judge of the Court of Federal Claims had dismissed certain AMCOR-partnership plaintiffs' statute of limitations and tax-motivated interest claims for lack of subject matter jurisdiction. *See Keener I*, 76 Fed.Cl. at 466, 470. On appeal, the United States Court of Appeals for the Federal Circuit affirmed the lower court's judgment. *See Keener II*, 551 F.3d 1358. Although the government moved for a

summary affirmance in all related AMCOR-partnership cases, the United States Court of Appeals for the Federal Circuit denied defendant's motion and lifted the stays in *Prati* and *Deegan* "to proceed as representative of cases involving settling partners and non-settling partners, respectively." *Prati III*, 603 F.3d at 1304.

As in *Keener II*, the United States Court of Appeals for the Federal Circuit affirmed Judge Block's decision in *Prati I*. *See Prati III*, 603 F.3d at 1309. In its decision, the United States Court of Appeals for the Federal Circuit held that the statute of limitations issue is a partnership item that the *Prati* and *Deegan* plaintiffs were required to raise in the partnership-level proceedings prior to either entering into a settlement or stipulating to judgment in the Tax Court proceedings, and, therefore, the *Prati* and *Deegan* plaintiffs were barred from raising statute of limitations claims in subsequent refund proceedings in the United States Court of Federal Claims. *See Prati III*, 603 F.3d at 1307. The United States Court of Appeals for the Federal Circuit also concluded that plaintiffs' tax motivated interest claims were partnership items, not subject to litigation in the Court of Federal Claims, in accordance with 26 U.S.C. § 7422(h). *See Prati III*, 603 F.3d at at 1308. The United States Court of Appeals for the Federal Circuit subsequently, summarily affirmed judgment in 53 of the related AMCOR-partnership cases, which had been appealed to the United States Court of Appeals for the Federal Circuit. *See Keefe v. United States*, 407 Fed.Appx. 420 (Fed.Cir.2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 2119, 179 L.Ed.2d 894 (2011).[6] The United States Supreme Court denied *certiorari* in *Prati* on January 10, 2011. *See Prati, et ux. v. United States*, 131 S.Ct. 940 and *Deegan, et ux. v. United States*, —— U.S. ——, 131 S.Ct. 937, 178 L.Ed.2d 754 (2011).

---

5. In *Fillmore,* the *Prag* plaintiffs assert a naked assessment claim for tax years 1982 and 1984. The *Stecker* plaintiffs allege a naked assessment claim for tax year 1984 and backdated assessment and naked assessment claims for tax year 1988.

6. Although plaintiffs in 57 AMCOR cases appealed to the United States Court of Appeals for the Federal Circuit, *see Prati III*, 603 F.3d at 1304, it appears that *Keefe v. United States* covered only 53 of those appeals. *See Keefe v. United States*, 407 Fed.Appx. 420, 420 n. *.

Plaintiffs in the above captioned, *Fillmore* case, along with plaintiffs in 13 other AMCOR-partnership tax refund cases, also proposed to Judge Block that all 14 cases be transferred to a single Judge for consolidation and resolution of common claims. *See Isler v. United States,* Case No. 01–344T, March 29, 2011 Order, at 2. Again, Judge Block denied plaintiffs' motion to consolidate, finding that, "the claims that plaintiffs assert to be common to these fourteen cases are claims that the court has already dismissed for lack of jurisdiction." *Isler v. United States,* Case No. 01–344T, March 29, 2011 Order, at 3.

After reassignment of the *Fillmore* case to the undersigned Judge, and following a June 28, 2011, status conference, the *Fillmore* plaintiffs filed a motion requesting reconsideration of Judge Block's Order dismissing their statute of limitations and tax motivated interest claims. As stated in an Order issued by the undersigned Judge, at the status conference, "counsel for both parties agreed that the following cases *Prati v. United States,* 81 Fed.Cl. 422 (2008), *Prati v. United States,* 82 Fed.Cl. 373 (2008), and *Prati v. United States,* 603 F.3d 1301 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir. 2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 940, 178 L.Ed.2d 754 (2011) are precedential regarding the above captioned case." Plaintiffs, however, argue in their current motions for reconsideration that the legal analyses in *Prati I, II,* and *III,* are insufficient to support the *sua sponte* dismissal by Judge Block of their limitations and penalty interest claims without the court ever having reviewed or addressed their distinguishable facts and arguments, especially given that their case never actually was consolidated with *Prati.*

## DISCUSSION

*Reconsideration*

■ Reconsideration of a judgment is not intended to permit a party to retry its case when it previously was afforded a full and fair opportunity to do so. The United States Court of Appeals for the Federal Circuit has stated that: "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res.,*

*Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.), *reh'g denied* (Fed.Cir. 1990); *see also Carter v. United States,* 207 Ct.Cl. 316, 318, 518 F.2d 1199, 1199 (1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86, *reh'g denied,* 424 U.S. 950, 96 S.Ct. 1423, 47 L.Ed.2d 356 (1976); *Osage Tribe of Indians of Okla. v. United States,* 97 Fed.Cl. 345, 348 (2011) (discussing Rules 59(a) and 60(b) of the Rules of the Court of Federal Claims (RCFC)); *Oenga v. United States,* 97 Fed.Cl. 80, 83 (2011) (discussing RCFC 59(a)); *Webster v. United States,* 92 Fed.Cl. 321, 324, *recons. denied,* 93 Fed.Cl. 676 (2010) (discussing RCFC 60(b)); *Alpha I, L.P. ex rel. Sands v. United States,* 86 Fed.Cl. 126, 129 (2009) (discussing RCFC. 54(b) and 59(a)); *Banks v. United States,* 84 Fed.Cl. 288, 291–92 (2008) (discussing RCFC 54(b) and 59(a)); *Corrigan v. United States,* 70 Fed.Cl. 665, 667–68 (2006) (discussing RCFC 59(a)); *Tritek Techs., Inc. v. United States,* 63 Fed.Cl. 740, 752 (2005); *Keeton Corr., Inc. v. United States,* 60 Fed.Cl. 251, 253 (2004) (discussing RCFC 59(a)); *Paalan v. United States,* 58 Fed.Cl. 99, 105 (2003), *aff'd,* 120 Fed.Appx. 817 (Fed.Cir.), *cert. denied,* 546 U.S. 844, 126 S.Ct. 91, 163 L.Ed.2d 108 (2005); *Citizens Fed. Bank, FSB v. United States,* 53 Fed.Cl. 793, 794 (2002) (discussing RCFC 59(a)).

■ "Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" *Caldwell v. United States,* 391 F.3d 1226, 1235 (Fed.Cir.2004) (quoting *Fru–Con Constr. Corp. v. United States,* 44 Fed.Cl. 298, 300 (1999)), *reh'g en banc denied* (Fed.Cir.), *cert. denied,* 546 U.S. 826, 126 S.Ct. 366, 163 L.Ed.2d 72 (2005) (discussing RCFC 59(a)); *see also Fiskars, Inc. v. Hunt Mfg. Co.,* 279 F.3d 1378, 1382 (Fed.Cir.2002) ("Rule 60(b)(6) is available only in extraordinary circumstances and only when the basis for relief does not fall within any of the other subsections of Rule 60(b)." (citing *Marquip, Inc. v. Fosber America, Inc.,* 198 F.3d 1363, 1370 (Fed.Cir.1999), *reh'g denied* (Fed.Cir. 2000); *Provident Sav. Bank v. Popovich,* 71 F.3d 696, 700 (7th Cir.1995))); *Oenga v. United States,* 97 Fed.Cl. at 83. Generally, "[t]he cases seem to make [a] fault/no fault distinction the controlling factor in determin-

ing whether extraordinary circumstances will be found or not. In a vast majority of cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault. . . ." 12 Joseph T. McLaughlin and Thomas D. Rowe, Jr., Moore's Federal Practice § 60.48[3][b] (3rd ed. 2011) (discussing Federal Rule of Civil Procedure (FRCP) 60(b)); *see also Amado v. Microsoft Corp.*, 517 F.3d 1353, 1363 (Fed. Cir.2008) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)) (discussing RCFC 60(b)(6)).

■ Courts must address reconsideration motions with "exceptional care." *Carter v. United States*, 207 Ct.Cl. at 318, 518 F.2d at 1199; *see also Global Computer Enters. v. United States*, 88 Fed.Cl. 466, 468 (2009) (discussing RCFC 59(a)). "The three primary grounds that justify reconsideration are: '(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.'" *Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (Fed.Cir.2010) (*Degirmenci v. Sapphire–Fort Lauderdale, LLLP*, 642 F.Supp.2d 1344, 1353 (S.D.Fla. 2009)); *see also Griffin v. United States*, 96 Fed.Cl. 1, 7 (2010), *motion to amend denied, appeal dismissed*, 454 Fed.Appx. 899 (Fed. Cir.2011) (discussing RCFC 59(a)); *Totolo/King Joint Venture v. United States*, 89 Fed.Cl. 442, 444 (2009) (quoting *Stockton E. Water Dist. v. United States*, 76 Fed.Cl. 497, 499 (2007), *aff'd in part, vacated in part, rev'd in part on other grounds*, 583 F.3d 1344 (2009) (citation omitted) (discussing RCFC 59(a))) *appeal dismissed*, 431 Fed.Appx. 895 (Fed.Cir.), *reh'g denied* (2011); *Dairyland Power Coop. v. United States*, 90 Fed.Cl. 615, 652 (2009), *recons. denied*, 2010 WL 637793 (Fed.Cl. Feb. 22, 2010), *aff'd in part, vacated in part on other grounds*, 645 F.3d 1363 (Fed.Cir.2011) (discussing RCFC 59(a)); *Matthews v. United States*, 73 Fed.Cl. 524, 526 (2006) (citations omitted) (discussing RCFC 59); *Prati II*, 82 Fed.Cl. at 376 (discussing RCFC 59(a)); *Tritek Techs., Inc. v. United States*, 63 Fed.Cl. at 752; *Bannum, Inc. v. United States*, 59 Fed.Cl. 241, 243 (2003) (discussing RCFC 59(a)); *Citizens*

*Fed. Bank, FSB v. United States*, 53 Fed.Cl. at 794; *Strickland v. United States*, 36 Fed. Cl. 651, 657, *recons. denied* (1996) (discussing RCFC 59(a)); *Bishop v. United States*, 26 Cl.Ct. 281, 286, *recons. denied* (1992) (discussing RUSCC 59).

■ "Manifest," as in manifest injustice, is defined as "clearly apparent or obvious." *Ammex, Inc. v. United States*, 52 Fed.Cl. 555, 557 (2002), *aff'd*, 384 F.3d 1368 (Fed.Cir. 2004), *cert. denied*, 544 U.S. 948, 125 S.Ct. 1697, 161 L.Ed.2d 525 (2005) (discussing RCFC 59). "Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is 'apparent to the point of being almost indisputable.'" *Griffin v. United States*, 96 Fed.Cl. at 7 (quoting *Pac. Gas & Elec. Co. v. United States*, 74 Fed.Cl. 779, 785 (2006), *aff'd in part, rev'd in part on other grounds*, 536 F.3d 1282 (Fed.Cir.2008)). "A court, therefore, will *not* grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the Court.'" *Ammex, Inc. v. United States*, 52 Fed.Cl. at 557 (quoting *Principal Mut. Life Ins. Co. v. United States*, 29 Fed.Cl. 157, 164 (1993), *aff'd*, 50 F.3d 1021 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (Fed.Cir. 1995)) (emphasis in original); *see also Griffin v. United States*, 96 Fed.Cl. at 7; *Bowling v. United States*, 93 Fed.Cl. 551, 562, *recons. denied* (2010) (discussing RCFC 59(a) and 60(b)); *Webster v. United States*, 92 Fed.Cl. at 324 (discussing RCFC 59(a) and 60(b)); *Pinckney v. United States*, 90 Fed.Cl. 550, 555 (2009); *Tritek Techs., Inc. v. United States*, 63 Fed.Cl. at 752.

■ Moreover, a party will not prevail on a motion for reconsideration "by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed." *Matthews v. United States*, 73 Fed.Cl. at 526; *see also Bluebonnet Sav. Bank, FSB v. United States*, 466 F.3d 1349, 1361 (Fed.Cir.2006) ("Although the government makes an elaborate argument in its brief . . . the government never made that argument to the trial court until its motion for reconsideration fol-

lowing the trial court's issuance of its decision. As the trial court noted in denying the motion, an argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived and not preserved for appeal." (citing *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1359 n. 1 (Fed.Cir. 2005) and *Caldwell v. United States*, 391 F.3d at 1235)) (other citations omitted); *Yuba Natural Res., Inc. v. United States*, 904 F.2d at 1582–83; *Gelco Builders & Burjay Constr. Corp. v. United States*, 177 Ct.Cl. 1025, 1036–37 n. 7, 369 F.2d 992, 1000 n. 7 (1966) (discussing the Court of Claims Rule of Procedure 69, FRCP 60(b), and the rules of the Government Services Administration Board of Contract Appeals); *Magnum Opus Techs., Inc. v. United States*, 94 Fed.Cl. 553, 558 (2010) (court rejected argument made for the first time in a motion to alter or amend the judgment, citing *Bluebonnet Sav. Bank, FSB v. United States*, 466 F.3d at 1361) (discussing RCFC 59); *Young v. United States*, 92 Fed.Cl. 425, 435 (court rejected new claim made in a motion for reconsideration) (citations omitted), *recons. denied*, 94 Fed.Cl. 671 (2010), *aff'd*, 417 Fed.Appx. 943 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2011); *S. Nuclear Operating Co. v. United States*, 79 Fed.Cl. 135, 137 (2007), *aff'd in part, vacated in part on other grounds*, 637 F.3d 1297 (Fed.Cir.2011) (discussing RCFC 52(b) and 59(a)); *Stockton E. Water Dist. v. United States*, 76 Fed.Cl. at 500.

■■■ In sum, it is logical and well established that, " '[t]he litigation process rests on the assumption that both parties present their case once, to their best advantage;' a motion for reconsideration thus should not be based on evidence that was readily available at the time the motion was heard." *Seldovia Native Ass'n Inc. v. United States*, 36 Fed. Cl. 593, 594 (1996) (quoting *Aerolease Long Beach v. United States*, 31 Fed.Cl. 342, 376, *aff'd*, 39 F.3d 1198 (Fed.Cir.1994) (table)) *aff'd*, 144 F.3d 769 (Fed.Cir.1998). "Post-opinion motions to reconsider are not favored, especially 'where a party has had a fair opportunity to . . . litigate the point in issue.' " *Aerolease Long Beach v. United States*, 31 Fed.Cl. at 376 (quoting *Prestex, Inc. v. United States*, 4 Cl.Ct. 317, 318, *aff'd*, 746 F.2d 1489 (Fed.Cir.1984) (citing *Gen.*

*Elec. Co. v. United States*, 189 Ct.Cl. 116, 117–18, 416 F.2d 1320, 1321 (1969))) (omission in original; other citation omitted).

■■■ A party also does not get a second chance because it disagrees with the court's decisions. As the United States Court of Federal Claims stated in *Seldovia Native Association:*

> It has long been the view that motions for reconsideration should not be entertained upon "the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged."

*Seldovia Native Ass'n Inc. v. United States*, 36 Fed.Cl. at 594 (quoting *Roche v. Dist. of Columbia*, 18 Ct.Cl. 289, 290 (1883)); *see also Totolo/King Joint Venture v. United States*, 89 Fed.Cl. at 444 (When considering motions for reconsideration, "which by their nature are addressed to the court's discretion, a court must exercise exceptional care and avoid unnecessarily prolonged litigation at the behest of a dissatisfied party.").

Plaintiffs argue that their request for reconsideration is governed by RCFC 54(b), 59(a) and 60(b)(6) (2011). Rule 54(b) of the Rules of the United States Court of Federal Claims, "Judgment on Multiple Claims or Involving Multiple Parties," states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

RCFC 54(b). Rule 59(a)(1) of the Rules of the United States Court of Federal Claims,

"Grounds for New Trial or Reconsideration," states:

a) **In General.**

 **(1) Grounds for New Trial or Reconsideration.** The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues—and to any party—as follows:

 **(A)** for any reason for which a new trial has heretofore been granted in an action at law in federal court;

 **(B)** for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or

 **(C)** upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1). Rule 60(b) of the Rules of the United States Court of Federal Claims, "Grounds for Relief from a Final Judgment, Order, or Proceeding," states:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

RCFC 60(b).

Regarding RCFC 54(b) and 59(a), plaintiffs assert that when, "a party seeks reconsideration of an interlocutory order and the merits of their facts and arguments were never addressed," that request is governed by RCFC 54(b) and RCFC 59(a). Plaintiffs contend that Judge Block's Order entered in the 77 cases is best characterized as interlocutory because there never has been a final judgment in the *Fillmore* case. Defendant argues that plaintiffs' "motion for reconsideration does not fall under any permitted avenue for reconsideration." According to defendant, *Prati I* cannot be classified as interlocutory because judgment was entered in *Prati I*. Although whether or not to classify Judge Block's Order dismissing the *Fillmore* case as interlocutory does not really assist the resolution of the issues before this court, it is correct that Judge Block's judgment in *Fillmore* was vacated and the *Fillmore* case was reopened, then stayed, and subsequently reassigned to the undersigned Judge.

Plaintiffs assert that reconsideration under RCFC 54(b) is available when the court has "made an error of apprehension" of fact or when there has been a significant change in the law or facts. (citing *L-3 Comm. Integrated Sys., L.P. v. United States*, 98 Fed.Cl. 45, 48–49 (2011)). As to a potential "error of apprehension," plaintiffs argue:

[I]n *Prati I* the court erred in misapprehending that this case was ever consolidated with *Prati* or any other case for any purpose; that the facts of plaintiffs here, who are *unsettled* partners, are "virtually identical to the named representative cases," *i.e.,* the *settled* partners in *Prati;* that the legal arguments of unsettled-partners, including plaintiffs, were "virtually identical" to those of the settled partners in *Prati* and other test cases; and that plaintiffs here had ever waived or failed to reserve their right to conduct discovery to establish that their facts distinguish them from the representative cases.

(emphasis in original).

It is correct that the *Fillmore* case never was consolidated with *Prati* or the other AMCOR cases. Moreover, Judge Block indicated in *Prati II* that the 77 cases, including *Fillmore,* were not consolidated with *Prati,* even though prior to dismissing the 77 cases, including *Fillmore,* in *Prati I,* he had stated, the "action is representative of 77 factually-similar, so-called 'AMCOR' partnership tax refund cases, which are consolidated for the purposes of the instant motions." *See Prati I,* 81 Fed.Cl. at 423. In *Prati II,* Judge Block stated, "these cases were treated together-although never formally consolidated

or combined-for the limited purpose of addressing the common legal issues in the pending motions." *See Prati II*, 82 Fed.Cl. at 374. The parties, however, did select *Prati* to serve as a representative case because "[t]he taxpayers represented that *Keener, Prati*, and all the other AMCOR-partnership tax refund cases now on appeal before this [Federal Circuit] court were indistinguishable with respect to the jurisdictional issues presented in those cases...." *Prati III*, at 1303–04. Given the precedential nature of the *Keener* and the *Prati* decisions, however, whether or not *Fillmore* was consolidated with *Prati*, is not critical as to the issues addressed by the Federal Circuit.

According to plaintiffs, besides "ma[king] an error of apprehension" that the claims brought by the *Fillmore* plaintiffs were consolidated with other AMCOR cases, plaintiffs also allege that Judge Block "made an error of apprehension" that the facts in the cases of the settled and unsettled partners were alike. Plaintiffs assert that "[s]ummary dismissal is manifestly unjust where, as here, plaintiffs never had a full and fair opportunity to distinguish their facts and have their legal arguments considered at all by the court." Plaintiffs allege that their case was stayed pending the resolution of *Prati I*, the representative case, "with the express understanding that those plaintiffs [in the remaining non-representative cases] would then be allowed discovery to prove whether their facts and circumstances distinguished their cases under the resulting legal analysis." Plaintiffs state that, "Judge Block dismissed all 77 cases, including this one, without regard to whether they related to settled or unsettled partners because, he erroneously stated, they 'present factual allegations virtually identical to the named representative case.'" Plaintiffs assert that "[t]here have been significant 'changes' in the relevant facts to the extent that plaintiffs' facts and the facts of unsettled partners generally are materially different from those of settled partners and have never been addressed by this court[.]" According to plaintiffs, in 2003, after the first AMCOR-partnership suits were filed and plaintiffs selected representative cases to determine preliminary legal issues, no suits had been filed yet for unsettled

partners. Plaintiffs allege that the "first suit for an *unsettled* partner addressing limitations and penalty interest was filed December 29, 2005 in *Weidemann* [v. United States, Case No. 05–1384 (judgment entered by the United States Court of Federal Claims, April 19, 2012), 2012 WL 1858942 (emphasis in original) ]," which was not one of the 77 cases identified in *Prati I. See Prati I*, 81 Fed.Cl. at 423 (identifying the 77 cases).

Defendant argues, however, "[p]laintiffs' 'unsettled partner' argument is the textbook example of the misuse of a motion for reconsideration. This is not a 'new' fact. It existed long before plaintiffs even filed suit (it was known by 2001 when the Tax Court entered its decision) and was alleged in [the *Fillmore* plaintiffs'] original complaint." (brackets added). In fact, despite plaintiffs' allegations that, "Judge Block addressed only settled-partner facts[,]" and his opinion "failed to take into account factual or legal differences between the cases," the United States Court of Appeals for the Federal Circuit addressed both the factual and legal differences between settled and unsettled partners in *Prati III* when it affirmed Judge Block's *Prati I* decision. The United States Court of Appeals for the Federal Circuit explained:

> This court denied the government's motions without prejudice, so as to permit the taxpayers to present argument as to why *Keener* should not control the disposition of the remaining cases. We lifted the stays in *Prati* and *Deegan* to permit them to proceed as representative of cases involving *settling* partners and *non-settling* partners, respectively.

*Prati III*, 603 F.3d at 1304 (emphasis added). The Federal Circuit continued:

> This court's decision in *Keener* rejected the principal arguments raised by the taxpayers in all of the related cases. In the Deegans' view, however, this court's opinion in *Keener* was narrower than the trial court's opinion in that case and thereby gave rise to a potential ground for distinguishing their claims from those of the settling partners. Under those circumstances, and in light of this court's direction that briefing and argument proceed

in both the *Prati* and *Deegan* cases so as to address any issues raised by the different legal status of the *settling and the non-settling partners,* we do not find that the failure to draw that distinction in the trial court resulted in a waiver of appellate rights.

*Prati III*, 603 F.3d at 1305 (emphasis added).

█ Thus, plaintiffs' argument in their motions to reconsider that "TEFRA's jurisdictional provisions differ based on whether a partner is settled or unsettled, and a jurisdictional analysis that denies jurisdiction over the claims of one type of partner does not automatically apply to render the same result for the other," is incorrect. The United States Court of Appeals for the Federal Circuit already has determined that the United States Court of Federal Claims lacks jurisdiction to decide either settled or unsettled AMCOR partners' claims for allegedly untimely assessment because untimely assessment is a partnership item. *See Prati III,* 603 F.3d at 1307 ("[W]e hold that the statute of limitations issue is a partnership item and that the Pratis and the Deegans were required to raise the limitations issue in the partnership-level proceeding prior to either entering settlement or stipulating to judgment in the Tax Court.") (footnote omitted); *Keener II,* 551 F.3d at 1363 ("[T]he Court of Federal Claims correctly determined that it lacked jurisdiction over the limitations claim.") (footnote omitted). The United States Court of Appeals for the Federal Circuit also has held that both settled and unsettled partners in the AMCOR litigation are barred from raising claims for tax-motivated interest in this court. *See Prati III,* 603 F.3d at 1308 ("Because the appellants' challenge to the penalty interest assessments is inherently a dispute over the proper characterization of the partnerships' transactions, that issue is barred by section 7422(h) from being litigated in the refund action before the Court of Federal Claims."); *Keener II,* 551 F.3d at 1367 ("The Court of Federal Claims correctly determined that, under I.R.C. § 7422(h), it lacked jurisdiction over ... [t]axpayers' claims for refunds of penalty interest, I.R.C. § 6221(c), on the grounds that their underpayments of tax were not

attributable to 'tax motivated transactions.' ").

Besides "error[s] of apprehension" and a change in the facts, plaintiffs further argue that reconsideration is necessary because "[t]here have also been significant changes in the law since *Prati I, II,* and even *III* were briefed and/or issued," which implicates a *res judicata* analysis. According to plaintiffs, this court must address *res judicata* before addressing jurisdiction, and under a *res judicata* analysis, plaintiffs argue they never were bound to the partnership-level proceedings. Plaintiffs contend that the legal arguments of the unsettled partners have not been examined by the United States Court of Federal Claims and that the limitations and penalty interest claims of unsettled partners "are largely based on the doctrine of *res judicata,*" which, according to plaintiffs, "Judge Block specifically stated he would not address [in *Prati I* ]," and "the Federal Circuit never considered."

█ *Res judicata* is an affirmative defense going to the merits of the case, which, if properly asserted, bars the court from hearing the case. *See Case, Inc. v. United States,* 88 F.3d 1004, 1011 (Fed.Cir.1996) ("Turning to the merits, the doctrine of *res judicata* prevents a party from relitigating the same claims that were or could have been raised before.") (citations omitted). However, " ' "[j]urisdiction is a threshold issue and a court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." ' " *Wolfchild v. United States,* 101 Fed.Cl. 54, 64–65 (quoting *Ultra–Precision Mfg. Ltd. v. Ford Motor Co.,* 338 F.3d 1353, 1356 (Fed.Cir.2003) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.,* 304 F.3d 1235, 1241 (Fed.Cir.2002)) and citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)), *recons. denied* 101 Fed.Cl. 92 (2011). Previous rulings of the Court of Federal Claims, in some instances, have addressed jurisdictional grounds before addressing *res judicata* claims. *See, e.g., Vandesande v. United States,* 94 Fed.Cl. 624, 636 n. 8 (2010) ("Because the Court finds it lacks jurisdiction over Plaintiff's claim, it is not necessary to address Defendant's assertions of *res judica-*

ta and collateral estoppel."), *rev'd on other grounds*, 673 F.3d 1342 (Fed.Cir.2012); *Simmons v. United States*, 71 Fed.Cl. 188, 189 ("Because the Court dismisses this case for lack of subject-matter jurisdiction, it does not address the Government's alternative motion for summary judgment, affirmative defenses, nor the merits of the Plaintiff's claims."), *appeal dismissed*, 189 Fed.Appx. 957 (Fed. Cir.2006); *Gustafson v. United States*, 27 Fed.Cl. 451, 452 n. 1 (1993) ("[B]ecause this court concludes that, in any event, it lacks jurisdiction over the instant action, the court will not ask the parties to expend the additional resources required for further briefing [concerning a *res judicata* issue]. Hence, the court will dismiss plaintiffs' complaint for lack of jurisdiction and will not reach the res judicata issue."). As the Federal Circuit has indicated, "courts must always look to their jurisdiction, whether the parties raise the issue or not." *View Eng'g, Inc. v. Robotic Vision Sys. Inc.*, 115 F.3d 962, 963 (Fed.Cir. 1997).

▇▇ In support of their *res judicata* argument, plaintiffs cite four cases: *Duffie v. United States*, 600 F.3d 362 (5th Cir.), *cert. denied*, —— U.S. ——, 131 S.Ct. 355, 178 L.Ed.2d 149 (2010); *Jade Trading, LLC ex rel. Ervin v. United States*, 598 F.3d 1372 (Fed.Cir.2010); *Henderson ex rel. Henderson v. Shinseki*, —— U.S. ——, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011); and *United States v. Tohono O'Odham Nation*, —— U.S. ——, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011). However, *Jade Trading* and *Duffie* were issued prior to the Federal Circuit's opinion in *Prati III* and, therefore, do not constitute intervening law. Furthermore, the decision in *Duffie v. United States* was issued by the United States Court of Appeals for the Fifth Circuit and is not binding on this court as the Fifth Circuit is not a precedential court for the United States Court of Federal Claims. This court is bound by the precedent of the United States Supreme Court and the United States Court of Appeals for the Federal Circuit unless the

facts are distinguishable or the Federal Circuit decision has been overturned by the Supreme Court or by federal statute.[7] *See Strickland v. United States*, 423 F.3d 1335, 1338 n. 3 (Fed.Cir.) ("Ordinarily, a trial court may not disregard its reviewing court's precedent. There are two narrow exceptions: if the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision." (citing *Crowley v. United States*, 398 F.3d 1329, 1335 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.), *cert. denied*, 546 U.S. 1031, 126 S.Ct. 733, 163 L.Ed.2d 569 (2005) and *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368, 1372 (Fed.Cir.) *reh'g and reh'g en banc denied* (Fed.Cir. 2000)), *reh'g en banc denied* (Fed. Cir. 2005); *see also Hall v. Secy. of Dep't of Health and Human Servs.*, 93 Fed.Cl. 239, 247 ("This court may not ignore the binding precedent of the Federal Circuit unless the United States Supreme Court or a federal statute expressly overrules that precedent." (citing *Strickland v. United States*, 423 F.3d at 1338)), *recons. denied* (2010), *aff'd*, 640 F.3d 1351 (Fed.Cir.), *cert. denied sub nom. Hall v. Sebelius*, —— U.S. ——, 132 S.Ct. 815, 181 L.Ed.2d 525 (2011)).

Moreover, in *Duffie*, the United States Court of Appeals for the Fifth Circuit granted the government's cross-motion for summary judgment on the grounds of res judicata and lack of subject matter jurisdiction. *See Duffie v. United States*, 600 F.3d at 386–87. The court in *Duffie* did not announce, or even suggest, a rule that *res judicata* issues must be determined before a court reviews matters of jurisdiction, although the opinion discusses the issue first. *See id.* at 382. The *Duffie* court may have done so simply because the government presented *res judicata* as the first issue in its appellate brief. *See* Brief for Appellee, *Duffie v. United States*, 2009 WL 6698024, at *25, *41 (5th Cir.2009).

Plaintiffs' attempt to rely on two United States Supreme Court cases also fails to support their motions for reconsideration.

---

7. The United States Court of Federal Claims is bound by decisions of the United States Court of Claims, the predecessor court to this court and the United States Court of Appeals for the Federal Circuit. *See Banks v. United States*, 102 Fed.Cl.

115, 152 n. 44 (2011) ("When acting in its appellate capacity, the Court of Claims created precedent that is binding on this court.") (citation omitted); *see also South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed.Cir.1982).

14

Plaintiffs cite *Henderson ex rel. Henderson v. Shinseki* and *United States v. Tohono O'Odham Nation* as intervening changes in controlling law. These two cases, however, are not helpful to resolve the claims raised by the *Fillmore* plaintiffs. Defendant responds that both decisions by the United States Supreme Court were issued in 2011, "long after *Prati* had been affirmed by the Federal Circuit and after the Supreme Court had rejected petitions for *certiorari.* Moreover, plaintiffs' counsel in *Keefe* [*v. United States* ] raised *Henderson* to the Supreme Court, which resulted in yet another denied petition for *certiorari.*"

The issue in *Henderson* was whether the statutory period for filing an appeal to the United States Court of Veterans Appeals was jurisdictional. *See Henderson ex rel. Henderson v. Shinseki,* 131 S.Ct. at 1200. According to the plaintiffs, in *Henderson,* the United States Supreme Court articulated four factors to determine whether a "provision within a complex procedural framework that purports to restrict a citizen's access to the courts" is jurisdictional, or whether it may be ignored for equitable reasons, impacting the *res judicata* analysis. *Henderson,* however, concerned the jurisdiction of the United States Court of Veterans Appeals, not the jurisdiction of this court. Moreover, the United States Supreme Court indicated that its holding was largely predicated on the "unique administrative scheme" of the nonadversarial veterans benefits program, which gives great deference and support to claimants. *Id.* at 1200–1201, 1204.

Plaintiffs assert that *United States v. Tohono O'Odham Nation* also impacts the *res judicata* analysis because it speaks to the "proper construction of jurisdictional statutes." The plaintiffs point to the United States Supreme Court's statement in *Tohono O'Odham Nation* that the "Court of Appeals was wrong to allow its precedent to suppress the statute's aims. Courts should not render statutes nugatory through construction." (quoting *United States v. Tohono O'Odham Nation,* 131 S.Ct. at 1729–30). Plaintiffs contend that *Tohono O'Odham Nation* made clear that the United States Court of Appeals for the Federal Circuit in *Prati III* should

not have "ignored" the purpose of 26 U.S.C. § 6226(d) (1988) (repealed 1989) when it concluded that despite the statute's language, plaintiffs could have participated in the Tax Court proceedings. In *United States v. Tohono O'Odham Nation,* 131 S.Ct. 1723, the United States Supreme Court ruled that, under 28 U.S.C. § 1500 (2006), the United States Court of Federal Claims lacks jurisdiction when a plaintiff has a suit pending in another court and then files suit in the United States Court of Federal Claims based on substantially the same operative facts, regardless of the relief sought. *See United States v. Tohono O'Odham Nation,* 131 S.Ct. at 1731. There is no indication in *Prati III* that the United States Court of Appeals for the Federal Circuit was rendering 26 U.S.C. § 6226 nugatory through statutory construction. Rather, the *Prati III* court determined that the 1997 amendment to 26 U.S.C. § 6226 "merely codified prior practice in the Tax Court." *Prati III,* 603 F.3d at 1307 n. 4.

 With regard specifically to RCFC 60(b)(6), which permits relief from a judgment or order for "any other reason that justifies relief," plaintiffs offer only the following very brief statement: "For the reasons stated above, reconsideration is also warranted under RCFC 60(b)(6)." Plaintiffs have not demonstrated an intervening change in controlling precedent, the availability of new evidence or the need to correct clear error or prevent manifest injustice, *see Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC,* 597 F.3d at 1383, and plaintiffs offer no other reason which justifies relief. Plaintiffs, therefore, have not met their burden of proof to justify reconsideration due to extraordinary circumstances under RCFC 60(b)(6). *See Fiskars, Inc. v. Hunt Mfg. Co.,* 279 F.3d at 1382.

*Law of the Case Doctrine*

 Plaintiffs also make a separate argument that *Prati I* is not the "law of the case" and that the plaintiffs' "disputed issues were never presented nor decided in a former proceeding in the case," because *Prati I* did not distinguish between unsettled and settled partners (footnote omitted). The United States Supreme Court has stated that

"the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (citation and footnote omitted), *reh'g denied*, 462 U.S. 1146, 103 S.Ct. 3131, 77 L.Ed.2d 1381 (1983), *supplemented by* 466 U.S. 144, 104 S.Ct. 1900, 80 L.Ed.2d 194 (1984). Law of the case is a judicially created doctrine, under which "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." *Suel v. Sec'y, Health & Human Servs.*, 192 F.3d 981, 985 (Fed.Cir.1999) (citation omitted), *reh'g denied* (2000). Nevertheless, "law of the case doctrine is limited to issues that were actually decided, either explicitly or by necessary implication, in the earlier litigation." *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1335 (Fed.Cir.2004) (citation omitted), *reh'g en banc denied* (2004), *cert. denied*, 544 U.S. 948, 125 S.Ct. 1700, 161 L.Ed.2d 525 (2005); *see also Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed.Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). Law of the case doctrine applies to a court's own decisions as well as decisions of other courts in the same case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *see also Gindes v. United States*, 740 F.2d 947, 950 (Fed.Cir.) ("law of the case [i]s a rule that 'A decision by the court on a point in a case becomes the law of the case unless or until it is reversed or modified by a higher court.'" (quoting *Raylaine Worsteds, Inc. v. United States*, 137 Ct.Cl. 54, 146 F.Supp. 723, 726 (1956))), *cert. denied*, 469 U.S. 1074, 105 S.Ct. 569, 83 L.Ed.2d 509 (1984); *McGuire v. United States*, 97 Fed.Cl. 425, 433 (2011). Law of the case is a doctrine that exists to promote judicial economy and fairness. *See, e.g., Mendenhall v. Barber–Greene Co.*, 26 F.3d 1573, 1582 (Fed.Cir.) (noting that law of the case doctrine rests on the need for judicially economy), *cert. denied*, 513 U.S. 1018, 115 S.Ct. 582, 130 L.Ed.2d 496, and *cert. denied sub nom. D.G. v. T.M.N.*, 513 U.S. 1018, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994); *Suel v. Sec'y, Health & Human Servs.*, 192 F.3d at 984 (noting that law of the case aims to "protect the settled expectations of the parties and promote orderly development of the case.") (citations omitted).

The United States Court of Appeals for the Federal Circuit has further explained the fairness theory behind the law of the case doctrine, stating: "Its elementary logic is matched by elementary fairness-a litigant given one good bite at the apple should not have a second." *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed.Cir.) *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). In other words, "'no litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time.'" *Gindes v. United States*, 740 F.2d at 949 (quoting *United States v. Turtle Mountain Band of Chippewa Indians*, 222 Ct.Cl. 1, 612 F.2d 517, 520 (1979)). Furthermore, "a reassignment to another judge should not be viewed as declaring open season on relitigating any prior rulings with which a party disagrees." *Applegate v. United States*, 52 Fed.Cl. 751, 765 (2002), *appeal dismissed*, 57 Fed.Appx. 426 (Fed.Cir.), *aff'd*, 70 Fed.Appx. 582 (Fed. Cir.2003), *cert. denied*, 540 U.S. 1149, 124 S.Ct. 1145, 157 L.Ed.2d 1041 (2004) (citation omitted).

Law of the case is a discretionary doctrine that, "[i]n the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912) (citations omitted). Although courts have the power to revisit their own prior decisions, the United States Supreme Court has cautioned that "as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. at 816, 108 S.Ct. 2166

(quoting *Arizona v. California*, 460 U.S. at 618 n. 8, 103 S.Ct. 1382). More specifically, the United States Court of Appeals for the Federal Circuit has identified only three exceptional circumstances that justify a departure from the law of the case doctrine. The circumstances are essentially the same as those that justify granting a motion for reconsideration:

> Reasons that may warrant departure from the law of the case, thus providing an exception to the more rigorous requirements of *res judicata*, include the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice.

*Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed.Cir.2001) (citation omitted); *see also Gould, Inc. v. United States*, 67 F.3d 925, 930 (Fed.Cir.1995) (citing *Gindes v. United States*, 740 F.2d at 950); *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d at 900 (citing *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1580 (Fed. Cir.1983)). The standard to determine whether a court's previous decision was clearly erroneous and constitutes a manifest injustice " 'is a stringent one.... A mere suspicion of error, no matter how well supported, does not warrant reopening an already decided point.' " *Gindes v. United States*, 740 F.2d at 950 (quoting *N. Helex Co. v. United States*, 225 Ct.Cl. 194, 634 F.2d 557, 561–62 (1980) (citation omitted)). The United States Court of Appeals for the Federal Circuit has noted that a " 'strong showing of clear error ... is required before a court should reexamine its decision in the prior appeal.' " *Gindes v. United States*, 740 F.2d at 950 (quoting *United States v. Turtle Mountain Band of Chippewa Indians*, 222 Ct.Cl. at 8, 612 F.2d at 521).

 Despite the fact that the plaintiffs' case was not consolidated with *Prati I*, the judgment in *Prati I*, as affirmed by the United States Court of Appeals for the Federal Circuit, worked to dismiss plaintiffs' statute of limitations and tax motivated interest claims. The issues were fully litigated all the way to the United States Supreme Court, which denied *certiorari*. Furthermore, as the United States Court of Appeals for the Federal Circuit noted, the fact that the Pratis were settled partners and the Deegans, like the plaintiffs in *Fillmore*, were not settled partners, makes no difference in the determination of this court's jurisdiction over plaintiffs' statute of limitations and tax motivated interest claims. The United States Court of Appeals for the Federal Circuit has determined that the United States Court of Federal Claims does not have jurisdiction to adjudicate claims for untimely assessment and tax-motivated interest brought by either settled or unsettled AMCOR partners because the claims are partnership items, properly adjudicated at the partnership level. *See Keener II*, 551 F.3d at 1367; *Prati III*, 603 F.3d at 1308.

*Plaintiffs Assert Their Case is Distinguishable from Keener*

Finally, according to plaintiffs, their case is distinguishable from *Keener* because the taxpayers in *Keener* conceded that the FPAAs were conclusive as to the partnership's activities constituting tax motivated transactions and that their limitations claim was a partnership item pursuant to Treasury Regulation § 301.6231(a)(3)–1(b) (2012) (citing *Keener II*, 551 F.3d at 1362–63). Contrary to plaintiffs' claims, the plaintiffs in *Keener* made neither of the alleged concessions described by plaintiffs. Indeed, the two concessions to which plaintiffs refer were presented as claims to the *Keener* courts. The opinion in *Keener* states, "[t]axpayers argue that the [limitations] claim cannot be a 'partnership item....' " *Keener II*, 551 F.3d at 1363. Although the plaintiffs in *Keener* conceded that the statute of limitations issue was defined as a partnership item in the Treasury Regulation § 301.6231(a)(3)–1(b), they argued that the regulation was not entitled to deference because it directly contradicted the applicable statute, 26 U.S.C. § 6231(a)(3). *See Keener II*, 551 F.3d at 1362 (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694, *reh'g denied* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984), *reh'g denied sub nom. Am. Iron and*

*Steel Inst. v. Natural Res. Def. Council, Inc.,* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984), and *reh'g denied sub nom. Ruckelshaus v. Natural Res. Def. Council, Inc.,* 468 U.S. 1227, 105 S.Ct. 29, 82 L.Ed.2d 921 (1984)). The plaintiffs in *Keener* contended that while their statute of limitations claim satisfied the second and third prongs of the "partnership item" test in the statute at 26 U.S.C. § 6231(a)(3), it failed the first, rendering it a nonpartnership item. *See Keener II,* 551 F.3d at 1362–63. The *Keener* plaintiffs described the three prongs of the "partnership item" test as including "(1) items found in subtitle A [Income Taxes] that (2) must be taken into account for the partnership's taxable year and (3) are designated as 'more appropriately determined at the partnership level.'" *Keener II,* 551 F.3d at 1362–63. Because the statutory sections designating the appropriate timing for the IRS to submit FPAAs, 26 U.S.C. §§ 6229(a) and 6501, fall under Subtitle F (Procedure and Administration), rather than subtitle A, the *Keener* plaintiffs argued that their claims failed the partnership item test, because their claim was not an "item[ ] found in subtitle A" under the first prong of the "partnership item" test and, therefore, that "the Treasury regulation [§ 301.6231(a)(3)–1(b) ] is invalid to the extent it defines 'partnership item' to include any item outside subtitle A." *Keener II,* 551 F.3d at 1363. While the Federal Circuit ultimately determined that Treasury Regulation § 301.6231(a)(3)–1(b) was entitled to deference because the statute was ambiguous as to whether an item outside Subtitle A could be a partnership item, the plaintiffs in *Keener* argued that their statute of limitations claim was not a partnership item. *See Keener II,* 551 F.3d at 1362–63 (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. at 843, 104 S.Ct. 2778).

The plaintiffs before this court also contend that another distinction between earlier Federal Circuit decisions and their case is that, in *Keener* " '[e]ach relevant FPAA disallowed the partnership's deductions because "[t]he partnership's activities constitute[d] a series of sham transactions" ' and the '[t]axpayers concede that the FPAAs are conclusive ....'" (quoting *Alpha I, L.P., ex rel. Sands v. United States,* 89 Fed.Cl. 347, 358 (2009) (quoting *Keener II,* 551 F.3d at 1367)). The United States Court of Appeals for the Federal Circuit in *Keener II,* however, stated: "Taxpayers assert that their underpayments of taxes were not attributable to 'tax motivated transactions....'" *Keener II,* 551 F.3d at 1365. While the plaintiffs in *Keener* agreed that the FPAAs were conclusive, one of their two claims in the *Keener* case was that the tax motivated penalties imposed by the FPAAs were inapplicable because the FPAAs listed several reasons for the disallowance, including independent grounds which do not fit the definition of tax motivated transactions. *See Keener II,* 551 F.3d at 1367. The *Keener* plaintiffs argued that, given the multiple, separate and independent grounds for the disallowance, including grounds not attributable to tax motivated transactions, the "FPAAs fail to establish that Taxpayers' underpayments were attributable to 'tax motivated transactions.'" *Keener II,* 551 F.3d at 1367. Therefore, according to the *Keener* plaintiffs, the tax motivated penalties they had paid should be refunded. *See Keener II,* 551 F.3d at 1367. The Federal Circuit in *Keener,* however, noted that even if the Court of Federal Claims "had jurisdiction over this argument, we would not be persuaded. The inequitable result of Taxpayers' contention would be to impose penalty interest when a deduction is disallowed because the partnerships' transactions were tax motivated, but *not* to impose penalty interest when that deduction is also disallowable on other inseparable grounds." *Keener II,* 551 F.3d at 1367 (emphasis in original; citations omitted). From the taxpayers' arguments in *Keener* that the FPAAs were faulty, and the underpayments were not attributable to tax motivated transactions, the plaintiffs here improperly try to infer that the plaintiffs in *Keener* were conceding that the partnerships' transactions were tax motivated. In sum, while the Fillmore plaintiffs assert that the holdings in *Keener* and *Prati* were "predicated on alleged concessions by the taxpayers," their assertions are incorrect. The holdings in *Keener II* and *Prati III* were predicated on the fact that the plaintiffs' refund claims were attributable to partnership items and the Court of Federal Claims did not have jurisdiction to hear

such claims. *See Prati III*, 603 F.3d at 1307–08; *Keener II*, 551 F.3d at 1367. The Fillmore plaintiffs' untimely assessment and tax-motivated interest issues have been fully litigated several times and, as far as possible, ending in denial of *certiorari* by the United States Supreme Court. *See Keener I*, 76 Fed.Cl. 455; *Keener II*, 551 F.3d 1358; *Keener v. United States*, 130 S.Ct. 153; *Prati I*, 81 Fed.Cl. 422; *Prati II*, 82 Fed.Cl. 373; *Prati III*, 603 F.3d 1301; *Prati, et ux. v. United States*, 131 S.Ct. 940; *Deegan, et ux. v. United States*, 131 S.Ct. 937.

## CONCLUSION

For the foregoing reasons, plaintiffs have not demonstrated an adequate basis to reconsider Judge Block's earlier Order dismissing plaintiffs' tax-motivated interest and statute of limitations claims. Plaintiffs' motions for reconsideration are, therefore, **DENIED.** The plaintiffs' additional claims remain to be addressed.

**IT IS SO ORDERED.**